UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORTH STAR IP HOLDINGS, LLC,<br><br>                              Plaintiff,<br><br>          - against -<br><br>ICON TRADE SERVICES LLC,<br><br>                              Defendant. | Case No. _____<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN AND FALSE ASSOCIATION, UNFAIR COMPETITION, AND DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff North Star IP Holdings, LLC ("Plaintiff") hereby alleges the following facts in support of its complaint against defendant Icon Trade Services LLC ("Defendant"):

## PARTIES

1.      Plaintiff is a Delaware limited liability company having its principal place of business in Vernon, California.

2.      On information and belief, Defendant is a Delaware limited liability company having its principal place of business in New York, New York.

## JURISDICTION

3.      This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.* and under the statutory and common law of the State of New York.  This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) and (b), § 1367, and § 2201, and 15 U.S.C. § 1121.

4.      Venue is proper under 28 U.S.C. § 1391(b) in this case because Defendant resides in this District, a substantial part of the events or omissions giving rise to Plaintiff's claims

occurred in this District, and, on information and belief, Defendant is subject to personal jurisdiction in this District.

**STATEMENT OF RELEVANT FACTS**

5.      On information and belief, in the mid-1990s, third-party Rebecca Minkoff began designing, marketing, and selling apparel, bags, jewelry, eyewear, and accessories under the REBECCA MINKOFF trademark.

6.      The REBECCA MINKOFF trademark is inherently distinctive as used with the above-mentioned goods and, further, has acquired distinctiveness due to the expenditure of significant amounts to advertise, market, and promote the trademark and the goods offered thereunder and significant sales and consumer recognition of said goods.  As of August 17, 2022, Rebecca Minkoff's promotional Instagram account, @rebeccaminkoff, had more than 902,000 followers, her promotional Facebook account, https://www.facebook.com/rebeccaminkoff, had more than 431,000 followers, and her promotional Twitter account, @rebeccaminkoff, had more than 869,300 followers.  The REBECCA MINKOFF trademark and the goods offered thereunder have also been the subject of significant unsolicited publicity.  In sum, the REBECCA MINKOFF trademark is a strong trademark, uniquely identifying the high quality of goods offered thereunder.

7.      On information and belief, in 2005, Rebecca Minkoff LLC ("RML") was formed for the purpose of operating the business offered under the REBECCA MINKOFF trademark.

8.      On information and belief, Rebecca Minkoff Holdings LLC ("RM Holdings") was formed for the purpose of holding certain of RML's assets, including, but not limited to, the REBECCA MINKOFF trademark.

9.      On March 1, 2012, RM Holdings licensed to RML the right to, *inter alia*, use and sublicense the REBECCA MINKOFF trademark, subject to certain conditions (the "Master

License Agreement").  The Master License Agreement provided, *inter alia*, that:  "[u]pon expiration or termination of this Agreement for any reason whatsoever, [RML] will execute and deliver to [RM Holdings] any and all documents required by [RM Holdings] for terminating any and all sub-licenses and other documents regarding [RML's] use of the Licensed Trademarks and Licensed IP"; "[i]f [RML] institutes for its protection or is made a defendant in any proceeding under bankruptcy, insolvency, reorganization or receivership law, or if either party is placed in receivership or makes an assignment for benefit of creditors or is unable to meet its debts in the regular course of business, the rights granted by [RM Holdings] hereunder shall immediately terminate, without any action or notice required, and all such rights shall revert back to [RM Holdings]"; and "[u]pon expiration or termination of this Agreement for any reason whatsoever, [RML] and its sub-licensees shall immediately cease any use of the Licensed Trademarks or Licensed IP, including the manufacture, Advertising, Promotion and sale of any product or Package bearing any of the Licensed Trademarks or embodying any of the Licensed IP."

10.     On information and belief, beginning in February 2007, Rosenthal & Rosenthal, Inc. ("Rosenthal") obtained a series of security interests in, *inter alia*, the REBECCA MINKOFF trademark pursuant to loan agreements entered into between RML and Rosenthal.  In September 2011, RM Holdings delivered a guarantee to Rosenthal for the obligations of RML under said loan agreements.  Rosenthal recorded UCC Financing Statements with the Florida Secretary of State reflecting each of these security interests contemporaneous to Rosenthal's acquisition thereof and, in any event, before the sublicense agreements entered into between RML and Defendant, as described below.

11.     On information and belief, on or around October 25, 2019, RML and Defendant entered a sublicense agreement whereby RML sublicensed Defendant the right to use the

REBECCA MINKOFF trademark for unisex hard luggage, unisex soft luggage with wheels and trolley, unisex duffle bags with wheels and trolley, backpacks with wheels and trolley, dopp kits, packing cubes, and luggage tags (the "First Sublicense Agreement"). The First Sublicense Agreement specifically states that RM Holdings is the owner of the REBECCA MINKOFF trademark and has granted RML the right to sublicense the REBECCA MINKOFF trademark.

12.     On information belief, on or around November 20, 2019, RML and Defendant entered another license agreement whereby RML sublicensed Defendant the right to use the REBECCA MINKOFF trademark for women's washed or treated denim pants, women's washed or treated denim jeans, women's washed or treated denim jackets, and women's washed or treated denim tops (the "Second Sublicense Agreement"). Like the First Sublicense Agreement, the Second Sublicense Agreement specifically states that RM Holdings is the owner of the REBECCA MINKOFF trademark and has granted RML the right to sublicense the REBECCA MINKOFF trademark.

13.     On information and belief, on or around October 2020, RML and Defendant entered into an amendment of the Second Sublicense Agreement whereby the parties agreed to expand the product categories in the Second Sublicense Agreement to include activewear, performance athletic footwear, and jewelry.

14.     On information and belief, on or around 2021, RML and Defendant entered into a second amendment of the Second Sublicense Agreement whereby the parties agreed to expand the product categories in the Second Sublicense Agreement to include watches and watch bands.

15.     On information and belief, RML and RM Holdings defaulted on their obligations to Rosenthal under the loan agreements because they were unable to meet their debts in the regular course of business. As a result and pursuant to the terms and provisions of a peaceful possession

agreement entered on January 24, 2022, RML and RM Holdings surrendered the collateral under the loan agreements – including, but not limited to, the REBECCA MINKOFF trademark – to permit a secured party sale of the collateral by Rosenthal or its agents.

16.     On information and belief, on February 7, 2022, RM Holdings and RML agreed to terminate the Master License Agreement effective that day, February 7, 2022 (the "Termination").

17.     On February 8, 2022, Rosenthal sold to Plaintiff, a bona fide purchaser for value, the collateral surrendered to Rosenthal pursuant to the January 24, 2022 peaceful possession agreement, including, but not limited to, the REBECCA MINKOFF trademark (the "Sale").

18.     Pursuant to the Sale, Plaintiff is the owner of the REBECCA MINKOFF trademark and has submitted the Assignment reflecting its ownership of the following REBECCA MINKOFF trademark registrations for recordation with the U.S. Patent & Trademark Office ("PTO"), which submission is still pending with the PTO's Assignment Services Division:

| Mark | Reg. No. | Reg. Date | Class and Goods |
|------|----------|-----------|-----------------|
| REBECCA MINKOFF | 3,889,028 | Dec. 14, 2010 | Class 18:  All-purpose carrying bags, clutch purses, handbags, and shoulder bags |
| REBECCA MINKOFF | 4,446,909 | Dec. 10, 2013 | Class 9:  Eyewear, namely, sunglasses, eyeglasses and ophthalmic frames and cases therefor; Leather and non-leather goods and accessories, namely, computer bags, protective carrying cases specifically adapted for personal digital assistants (PDA) and protective covers and cases for cell phones, laptops and portable media players<br><br>Class 14:  Watches and jewelry<br><br>Class 25:  Clothing, namely, shirts, t-shirts, blouses, sweaters, knit tops and bottoms, blazers, vests, pants, jeans, shorts, skirts, dresses, jackets, belts, scarves, and footwear |

| Mark | Reg. No. | Reg. Date | Class and Goods |
|------|----------|-----------|-----------------|
| | | | Class 35:  Retail and on-line store services, featuring, handbags, wallets, designer apparel, footwear, perfumes and cosmetics, eyewear, jewelry and watches, candles, and furniture |
| REBECCA MINKOFF | 4,552,835 | June 17, 2014 | Class 3:  Cosmetics in general, including perfumes |
| REBECCA MINKOFF | 5,160,257 | March 14, 2017 | Class 18:  All-purpose athletic bags; All-purpose carrying bags; All-purpose leather straps; Backpacks; Bags for carrying babies' accessories; Cases for keys; Clutch purses; Clutches; Coin purses; General purpose bags for carrying yoga equipment; Gym bags; Handbags; Hobo bags; Purses; Satchels; Shoulder bags; Tote bags; Wallets; Wallets including card holders; Wristlet bags<br><br>Class 25:  Athletic footwear; Athletic pants; Athletic shirts; Athletic shorts; Athletic skirts; Athletic tights; Belts; Blazers; Blouses; Dresses; Footwear; Jackets; Jeans; Knit bottoms; Knit tops; Leggings; Pants; Scarves; Shirts; Shorts; Skirts; Sweaters; T-shirts; Vests |
| REBECCA MINKOFF | 5,898,039 | Oct. 29, 2019 | Class 9:  Battery chargers; leather protective covers specially adapted for personal electronic devices, namely, mobile phones, laptops, and portable media players; wireless chargers<br><br>Class 14:  Bracelets; charms for jewelry; necklaces; precious metals, unwrought or semi-wrought; rings; watches and jewelry<br><br>Class 18:  All-purpose carrying bags; all-purpose leather straps; backpacks; bags for carrying babies' accessories; beach bags; briefcases; cases for keys; clutch purses; clutches; coin purses; general purpose bags for carrying yoga equipment; gym bags; handbags; |

| **Mark** | **Reg. No.** | **Reg. Date** | **Class and Goods** |
|---|---|---|---|
| | | | hobo bags; luggage; pocket wallets; purses; satchels; shoulder bags; tote bags; traveling bags; umbrellas; vanity cases sold empty; wallets; wallets including card holders; wristlet bags; textile shopping bags |
| | | | Class 25:  Athletic footwear; athletic pants; athletic shirts; athletic shorts; athletic skirts; athletic tights; belts; blazers; blouses; dresses; footwear; hosiery; jackets; jeans; knit bottoms; knit tops; leather belts; leggings; neckties; overcoats; pajamas; pants; scarves; shirts; shorts; skirts; socks; sports jerseys; sweaters; swimsuits; T-shirts; tights; underwear; vests. |
| | | | Class 35:  On-line retail store services featuring handbags, wallets, designer apparel, footwear, perfumes and cosmetics, eyewear, jewelry and watches, candles, and furniture; Retail store services featuring handbags, wallets, designer apparel, footwear, perfumes and cosmetics, eyewear, jewelry and watches, candles, and furniture |

True and correct copies of TESS and TSDR printouts from the PTO's website reflecting the title and status of the above registrations are attached hereto as **Exhibit A**.  A true and correct copy of the Trademark Assignment Cover Sheet reflecting Plaintiff's recordation of its ownership of these registrations are attached hereto as **Exhibit B**.

19.     Shortly thereafter, RM Holdings and RML delivered written notice of the Termination and Sale to all sublicensees of the REBECCA MINKOFF trademark, including, as pertinent to this action, Defendant.  Therein, RM Holdings and RML advised all sublicensees that as of the date of the Termination, RML no longer has the right to license the REBECCA

-7-

MINKOFF trademark and, except with respect to any sell-off rights under the relevant sublicenses, all sublicensees' rights to use the REBECCA MINKOFF trademark were terminated.

20.     RML's default under the loan agreements and/or the Termination effectively terminated the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto.   Nevertheless, Defendant continues to use the REBECCA MINKOFF trademark and has unambiguously expressed its belief that the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, remain in full force and effect and its intent to continue using the REBECCA MINKOFF trademark.  For example, Defendant continues to list REBECCA MINKOFF as one of its "brands" on its website at iconluxurygroup.com, as reflected in the printout attached hereto as **Exhibit C**.  Defendant also continues to advertise and sell luggage bearing the REBECCA MINKOFF mark through Soho Luggage, which, on information and belief, is an affiliate of Defendant's.  A printout from Soho Luggage's continued advertisement and sale of luggage bearing the REBECCA MINKOFF mark is attached hereto as **Exhibit D**.  Further, on January 18, 2022, Defendant filed a Summons With Notice against RML in the Supreme Court of the State of New York (assigned Index No. 650264/2022) demanding that RML file an appearance or demand for a complaint relating to a declaratory judgment as to whether the Second Sublicense was properly renewed.   A true and correct copy of the Summons With Notice is attached hereto as **Exhibit E**.  The Summons With Notice was served on RML, and extensions of time to respond to the Summons With Notice have been granted.  On August 26, 2022, RML filed its Notice of Appearance and Demand for Complaint.

## FIRST CAUSE OF ACTION

### (Trademark Infringement – 15 U.S.C. § 1114(1) and the Common Law)

21.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 20, above, as though fully set forth herein.

22.     Plaintiff is the owner of registered and common law rights in the REBECCA MINKOFF trademark.

23.     Defendant's actions as alleged herein constitute trademark infringement in violation of 15 U.S.C. § 1114(1) and the common law.  Specifically, despite the termination of the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, without Plaintiff's authorization or permission, Defendant continues to sell and market goods under the REBECCA MINKOFF trademark.  Defendant does so with the intent to trade upon the reputation and goodwill associated with the REBECCA MINKOFF trademark.  In so doing, Defendant is likely to confuse and deceive the public into believing that Defendant and/or its products are associated, affiliated or connected with, or approved, licensed, or sponsored by, Plaintiff, when, in fact, they are not.

24.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its business, reputation, and goodwill.  Defendant will continue to use, unless restrained, the REBECCA MINKOFF trademark, or a trademark confusingly similar thereto and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further infringement.

25.     Plaintiff is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts.  Plaintiff is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendant's infringement.

26.     Plaintiff is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of its wrongful acts.  Plaintiff is presently unable to ascertain the extent of the gains, profits, and advantages that Defendant has realized by reason of its infringement.

27.     Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of punitive damages, an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117, and destruction of all media and materials embodying the REBECCA MINKOFF trademark or marks confusingly similar thereto under 15 U.S.C. § 1118.

28.     Plaintiff is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (False Designation of Origin and False Association– 15 U.S.C. § 1125(a))

29.     Plaintiff repeats and realleges each and every allegation of paragraphs 1 through 28, above, as though fully set forth herein.

30.     Defendant's actions as alleged herein constitute false designation of origin and false association in violation of 15 U.S.C. § 1125(a).

31.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer and/or is likely to suffer damage to its business, reputation, and goodwill. Defendant will continue to use, unless restrained, the REBECCA MINKOFF trademark, or a

trademark confusingly similar thereto and will cause irreparable damage to Plaintiff.  Plaintiff has no adequate remedy at law and is entitled to an injunction restraining Defendant, its officers, agents, and employees, and all persons acting in concert with Defendant, from engaging in further acts of false designation of origin and false association.

32.     Plaintiff is further entitled to recover from Defendant the actual damages that it sustained and/or is likely to sustain as a result of Defendant's wrongful acts.  Plaintiff is presently unable to ascertain the full extent of the monetary damages that it has suffered and/or is likely to sustain by reason of Defendant's infringement.

33.     Plaintiff is further entitled to recover from Defendant the gains, profits, and advantages that Defendant has obtained as a result of its wrongful acts.  Plaintiff is presently unable to ascertain the extent of the gains, profits, and advantages that Defendant has realized by reason of its infringement.

34.     Because of the willful nature of Defendant's wrongful acts, Plaintiff is entitled to an award of treble damages and increased profits pursuant to 15 U.S.C. § 1117, and destruction of all media and materials embodying the REBECCA MINKOFF trademark or marks confusingly similar thereto under 15 U.S.C. § 1118.

35.     Plaintiff is also entitled to recover its attorneys' fees and costs of suit pursuant to 15 U.S.C. § 1117.

## **THIRD CAUSE OF ACTION**

### **(Common Law Unfair Competition)**

36.     Defendant repeats and realleges each and every allegation of paragraphs 1 through 35, above, as though fully set forth herein.

37.    By reason of the foregoing, Defendant has been, and is, engaged in acts of unfair competition in violation of the common law.

38.    Defendant's acts complained of herein have damaged and will continue to damage Plaintiff irreparably.  Plaintiff has no adequate remedy at law for these wrongs and injuries.  The damage to Plaintiff includes harm to its trademarks, goodwill, and reputation in the marketplace that money cannot compensate.  Plaintiff is therefore entitled to:  (a) injunctive relief restraining and enjoining Defendant and its agents, servants, employees, and attorneys, and all persons acting thereunder, in concert with, or on its behalf, from using the REBECCA MINKOFF trademark, or trademarks confusingly similar thereto, in connection with the marketing or sale of any goods or services by Defendant; (b) Plaintiff's actual damages sustained as a result of Defendant's wrongful acts; (c) an accounting of Defendant's profits from its sales of products bearing or using the REBECCA MINKOFF trademark, or trademarks confusingly similar thereto; (d) an award of Defendant's unjust profits, as well as sums sufficient to compensate Plaintiff for all harm suffered as a result of Defendant's conduct; and (e) punitive damages.

## FOURTH CAUSE OF ACTION

### (Declaratory Judgment – 28 U.S.C. §2201)

39.    Defendant repeats and realleges each and every allegation of paragraphs 1 through 38, above, as though fully set forth herein.

40.    Plaintiff contends that the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, have been terminated as of, at the latest, the date of the Termination.

41.     Defendant disputes that the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, have been terminated, and contends that they remain in full force and effect.

42.     A declaratory judgment is necessary to clarify whether the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, have been terminated.  This issue is the subject of a genuine dispute.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter judgment against Defendant as follows:

1.     Finding that Defendant has violated 15 U.S.C. §§ 1114(1), 1125(a) and the common law; has infringed the REBECCA MINKOFF trademark pursuant to 15 U.S.C. § 1114(1) and the common law; has engaged in acts of false designation of origin and false association in violation of 15 U.S.C. § 1125(a); has committed unfair competition pursuant to 15 U.S.C. § 1125(a) and the common law; and has violated the common law by engaging in unlawful, unfair, and fraudulent business practices;

2.     Ordering that Defendant and its officers, members, agents, servants, directors, employees, servants, partners, representative, assigns, successors, related companies, and attorneys and all persons in active concert or participation with Defendant or with any of the foregoing be enjoined preliminarily during the pendency of this action and permanently thereafter from:

a.     Using, promoting, advertising, publicizing, distributing, and posting, as applicable, the REBECCA MINKOFF trademark, or any trademarks confusingly similar thereto, or any other mark, name, symbol, design, trade dress, or logo which is likely to cause confusion or to cause mistake or to deceive persons into the erroneous belief that Defendant,

-13-

its business, or its goods are sponsored, licensed, or endorsed by Plaintiff, are authorized by Plaintiff, or are connected or affiliated in some way with Plaintiff, or vice versa;

        b.     Falsely implying Plaintiff's endorsement of Defendant's goods or business or engaging in any act or series of acts which, either alone or in combination, constitutes unfair methods of competition with Plaintiff and from otherwise interfering with or injuring the trademarks or the goodwill associated therewith;

        c.     Representing or implying that Defendant is in any way sponsored by, affiliated with, or endorsed or licensed by Plaintiff; or

        d.     Knowingly assisting, inducing, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in paragraphs 2(a) to (c) above.

3.     Declaring that the First Sublicense Agreement and the Second Sublicense Agreement, and all amendments thereto, have been terminated as of the Termination.

4.     Ordering that Plaintiff is the exclusive owner of the REBECCA MINKOFF trademark and that such trademark is valid, protectable, and distinctive;

5.     Ordering that Defendant shall, as applicable, remove and delete from its website and social media accounts and recall from all distributors, wholesalers, retailers, manufacturers, printers, vendors, jobbers, and the like and deliver to Plaintiff all products, printed graphics, promotional materials, labels, boxes, packaging, advertisements, patterns, and any other items, goods, or merchandise in any of their possession, custody, or control bearing or using the REBECCA MINKOFF trademark, or trademarks confusingly similar thereto;

6.     Granting an award of damages suffered by Plaintiff according to proof at the time of trial;

7.      Ordering that Defendant account to Plaintiff for any and all profits earned as a result of Defendant's acts of infringement in violation Plaintiff's rights under the Lanham Act and the common law;

8.      Granting an award of three times the amount of compensatory damages and increased profits pursuant to 15 U.S.C. § 1117;

9.      Granting an award of punitive damages for the willful and wanton nature of Defendant's aforesaid acts;

10.     For pre-judgment interest on any recovery by Plaintiff;

11.     Granting an award of Plaintiff's costs, expenses, and attorneys' fees; and

12.     Granting such other and further relief as is just and proper.

### <u>DEMAND FOR JURY TRIAL</u>

Plaintiff requests a trial by jury on all issues so triable in this action.

Respectfully Submitted,

Dated:  August 26, 2022

By: */s/Theodore C. Max*
Theodore C. Max
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
30 Rockefeller Plaza
New York, New York 10112
Telephone:  (212) 653-8700
tmax@sheppardmullin.com

Jill M. Pietrini (*Pro Hac Vice application pending*)
Paul A. Bost (*Pro Hac Vice application pending*)
**SHEPPARD MULLIN RICHTER &
HAMPTON LLP**
1901 Avenue of the Stars, Suite 1600
Los Angeles, California  90067
Telephone:  (310) 228-3700
jpietrini@sheppardmullin.com
pbost@sheppardmullin.com

*Attorneys for Plaintiff North Star IP Holdings, LLC*

SMRH:4870-9165-0862.1