# SheppardMullin

Sheppard, Mullin, Richter & Hampton LLP
30 Rockefeller Plaza
New York, New York 10112-0015
212.653.8700 main
212.653.8701 fax
www.sheppardmullin.com

Theodore C. Max
212.653.8702 direct
tmax@sheppardmullin.com

File Number: 85LZ-361988

October 19, 2022

**By ECF**
The Honorable Lorna G. Schofield
United States District Judge
U.S.D.C. - Southern District of New York
40 Foley Square
New York, NY 10007

> Re: *North Star IP Holdings, LLC v. Icon Trade Services LLC*,
> Case No. 1:22-cv-07324-LGS

Dear Judge Schofield:

We represent Counter-Defendant North Star IP Holdings, LLC ("North Star") and Third-Party Defendants Jalapeno Pizza Holdings LLC and Jalapeno Pizza LLC (collectively with North Star, "Counter-Defendants"). The undersigned counsel for Counter-Defendants submits this letter jointly with counsel for Counterclaimant and Third-Party Plaintiff Icon Trade Services LLC ("Icon") pursuant to the Court's order of September 15, 2022 (Dkt. 20) and in advance of the conference scheduled for October 26, 2022 at 4:10 p.m.

**(1) The Nature of the Case, the Principal Claims and Defenses, and the Major Legal and Factual Issues**

North Star's Position: North Star owns common law and registered rights in the REBECCA MINKOFF trademarks. North Star acquired those trademarks as a bona fide purchaser for value in an Article 9 proceeding under New York law. Dkt 23, ¶ 17. North Star recorded its assignment of those trademarks with the U.S. Patent and Trademark Office on July 14, 2022. North Star alleges that the license agreements granting Icon the right to use the REBECCA MINKOFF trademark in certain product categories were terminated because the master license between Jalapeno Pizza Holdings LLC fka Rebecca Minkoff Holdings LLC and Jalapeno Pizza LLC fka Rebecca Minkoff LLC was terminated, and because of the default resulting in the Article 9 proceeding. Icon was given written notice of the termination of those licenses, yet Icon continues to use the REBECCA MINKOFF trademarks. By definition, Icon's continued use of REBECCA MINKOFF in any format infringes North Star's rights pursuant to the Lanham Act (15 U.S.C. §§ 1114, 1125(a)) and constitutes unfair competition under the common law of the State of New York (collectively, "North Star's Infringement Claims").

Icon's Position: In late 2019, Icon entered into two license agreements with Rebecca Minkoff LLC ("RML") that entitled it to use the REBECCA MINKOFF trademark and derivatives

(the "Marks") on certain products. Neither license has expired nor been terminated under its terms. On March 31, 2022, Icon received a letter from North Star, a complete stranger to the Icon-RML relationship, stating that the two license agreements had terminated as the result of a termination of a separate license between RML and its affiliate, Rebecca Minkoff Holdings LLC ("RM Holdings"). Separately, North Star claimed that a creditor of RML and RM Holdings foreclosed on the Marks and that North Star had acquired them at a foreclosure sale. North Star has failed to provide any documentary evidence of either purported basis for the termination of the Icon-RML license despite numerous requests from Icon.

Icon, therefore, has filed a counterclaim/third-party claim for Declaratory Judgment against the Counter-Defendants to determine whether the two licenses continue to be valid and binding. Additionally, Icon filed (1) a counterclaim against North Star for intentionally procuring RML and RM Holdings' breach of the two licenses, and (2) counterclaims/third-party claims against the Counter-Defendants for both their previous breaches of the two licenses and the implied covenant of good faith and fair dealing.

The parties agree that the major legal and factual issue is whether the license agreements were terminated or remain viable, and whether title to the REBECCA MINKOFF trademarks was acquired by North Star through the Article 9 proceeding.

**(2)     The Basis of Subject Matter Jurisdiction and Venue**

North Star's claims arise under the trademark laws of the United States. *See* 15 U.S.C. § 1051, *et seq.* Accordingly, the Court has jurisdiction pursuant to 15 U.S.C. § 1121(a): "The district and territorial courts of the United States shall have original jurisdiction … of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties." The Court has jurisdiction over North Star's common law unfair competition claim pursuant to 28 U.S. § 1367(a). This District is the proper venue, as Icon has its principal place of business in New York, New York. *See* 28 U.S.C. § 1391(b).

Icon admits that the Court has subject matter jurisdiction over this case and has personal jurisdiction over Icon , and that venue is proper. Dkt. ¶ 28, ¶¶ 3-4.

**(3)     Motions, Pending Motions, and Applications**

As set forth in its pre-motion letter (Dkt. 24), Counter-Defendants intended to file a motion to dismiss Icon's claims for breach of contract, in part, and breach of the implied covenant for failure to state a claim because Counter-Defendants had sole, subjective discretion under the licenses regarding approval of any products or designs bearing the previously licensed REBECCA MINKOFF trademarks, and to dismiss the same claims because they are arbitrable (the "Planned Motion to Dismiss"). However, the parties agree that the resolution of Icon's third and fourth counterclaims that are the subject of the Planned Motion to Dismiss can only occur after it is

determined whether the Licenses remain in effect, and whether North Star is, as it claims, the owner of the REBECCA MINKOFF trademarks.

Accordingly, what the parties propose is to bifurcate discovery into two phases. In the first phase, discovery would be permitted into North Star's Infringement Claims, Icon's first counterclaim for a declaratory judgment that the Licenses remain in effect, and Icon's affirmative defenses. All discovery pertaining solely to Icon's third and fourth counterclaims would be stayed pending resolution of the first phase. The parties' agreement to bifurcate discovery is not a waiver of any objections any party may have to the discovery served upon it during any phase.

There is a dispute between the parties as to whether this first phase of discovery should include Icon's second counterclaim for tortious interference with contract against North Star, or whether such discovery should be deferred. It is Icon's position that discovery on the second counterclaim should proceed now because the issue of whether North Star interfered with the Licenses is inextricably intermingled with the issue of whether North Star properly acquired the REBECCA MINKOFF trademarks, and whether the Licenses remain in effect. For its part, North Star contends that discovery on the second counterclaim should be stayed. The viability of the second counterclaim wholly depends upon the viability of the Licenses. In other words, if the Licenses are found to have been terminated, the second counterclaim cannot stand.

Subject to leave of Court in compliance with Your Honor's Individual Practices, the parties agree that they may file dispositive motions regarding North Star's Infringement Claims, Icon's affirmative defenses thereto, and Icon's first counterclaim at the conclusion of discovery as to the foregoing, as well as Icon's second counterclaim, if it is the subject of discovery during the first phase. The parties agree that Counter-Defendants will withhold filing the Planned Motion to Dismiss, without prejudice and waiver, pursuant to this agreed-to-schedule.

Following the culmination of the first phase of discovery and motion practice, the parties may proceed to the second phase of discovery, depending on the outcome of any dispositive motion practice following the first phase.

**(4)  Pending and Likely Discovery**

To date, the parties have not served any discovery.

North Star intends to take discovery regarding Icon's use of the REBECCA MINKOFF trademarks on or in conjunction with any products, Icon's use of the REBECCA MINKOFF trademarks in advertising, marketing, and promotion for such products, Icon's gross revenues earned from the sale of products offered under the REBECCA MINKOFF trademarks, Icon's costs actually expended earning such gross revenues, Icon's claim that the licenses were not terminated, and Icon's claim that North Star is not the owner of the REBECCA MINKOFF trademarks.

In the contemplated first phase of discovery, Icon intends to take discovery regarding North Star's allegations (in its operative complaint and in the parties' correspondence) about the purported termination of the Icon-RML licenses. As North Star alleges several alternative mechanisms by which the Icon-RML licenses could have terminated, Icon will seek discovery regarding each. Icon intends to take discovery concerning:

1. The purported RM Holdings-RML license agreement, including but not limited to, documents and correspondence relating to the RM Holdings-RML license agreement and the purported termination of such agreement;

2. What separation existed, if any, between RM Holdings and RML when they allegedly entered into the RM Holdings-RML license agreement and when this agreement terminated;

3. RML's default under its loan agreements with a creditor which, per North Star, allegedly triggered the termination of the Icon-RML licenses;

4. The alleged Article 9 foreclosure sale whereby North Star allegedly acquired the Marks;

5. North Star's communications with RM Holdings and RML related to the termination of the Icon-RML licenses; and

6. What separation exists, if any, between RM Holdings and RML on one hand, and North Star on the other.

Assuming the case proceeds through the contemplated second phase of discovery, Icon intends to take discovery regarding Counter-Defendants' alleged breaches of the Icon-RML licenses. Such discovery would including documents and testimony related to the approval process for Icon's product submissions and any collaborations between RML/RM Holdings and third-parties to develop products falling within Icon's product categories.

### (5) A Computation of Each Category of Damages Claimed

North Star seeks its actual damages, including, but not limited to, profits North Star would have earned had it been able to license the REBECCA MINKOFF trademarks for the goods identified in the licenses to another licensee. North Star also seeks disgorgement of Icon's profits, an award of three times the amount of compensatory damages, and increased profits pursuant to 15 U.S.C. § 1117, punitive damages, and its attorneys' fees and costs under 15 U.S.C. § 1117. North Star will not be able to provide a more complete computation until it takes discovery from Icon.

Icon seeks a declaratory judgment that the Icon-RML licenses continue to be in effect and ancillary injunctive relief, as well as damages on its other counterclaims in an amount of no less than $10 million, together with interest, costs and other relief as the Court may deem just and

proper. Icon has suffered damages arising from Counter-Defendants' failure to approve products, including lost profits and revenues from the products it could have sold had product approvals not been unreasonably withheld, and lost profits and revenues arising from RML and RM Holdings' collaborations with third parties to sell products within the scope of the Icon-RML licenses.

### (6) The Status of Settlement Discussions

The parties have engaged in business-to-business, with counsel, settlement discussions. Counter-Defendants request private mediation before a retired federal judge. Icon requests a settlement conference before the assigned Magistrate Judge. The Parties agree that the settlement conference should occur following the exchange of documents during the first phase of discovery, to take place in early January 2023.

### (7) Other Relevant Information

In addition to the deadlines set forth in the proposed Civil Case Management Plan and Scheduling Order enclosed herein, the parties agree that Counter-Defendants' answer to Icon's counterclaims and third-party claims is due by November 4, 2022.

Respectfully submitted,

/s/Theodore C. Max

Theodore C. Max

SMRH:4876-3063-5065.3

cc: Counsel of Record (By ECF)