April 14, 2023

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:   *North Star IP Holdings, LLC v. Icon Trade Services LLC,*
              Case No. 1:22-cv-07324-LGS

Dear Judge Schofield:

      Per the Court's Memo Endorsement and Order, Dkts. 64 and 66, the parties submit the following joint letter regarding three discovery disputes that they have been unable to resolve after meeting and conferring twice earlier this week.

**A.    Icon's Request for CADs**

Icon's Position: North Star Should Produce CADs Concerning Goods Covered by Icon's License

      Icon Trade Services LLC ("Icon") has alleged that North Star IP Holdings, LLC ("North Star"), Jalapeno Pizza Holdings LLC ("RM Holdings"), and Jalapeno Pizza LLC ("RML") (collectively, "Counterclaim-Defendants"), strategized to terminate prematurely Icon's licenses to sell goods under the REBECCA MINKOFF trademarks (the "Marks").  Dkt. 13, ¶¶ 35, 49.  In the last deposition taken in this matter, on March 29, North Star's principal, Gerard Guez, disclosed for the first time the existence of documents that bear directly on this issue.

      Discovery has shown that RML was in talks with Sunrise Brands, LLC ("Sunrise"), North Star's parent that Guez also owns and controls, in early 2021 to license the RM BY REBECCA MINKOFF mark on sportswear and denim goods, even though Icon held a license for the Marks in the denim category that Icon had the right to, and did, extend until December 31, 2025.  During Guez's deposition, which the Court will recall North Star attempted to prevent by arguing Guez had "minimal involvement in the facts underlying this case," Dkt. 55 at 2, Guez testified that Sunrise had created a collection of computer-aided design sketches (known as "CADs" in the apparel industry) for goods within Icon's license.  The CADs were created so Sunrise could show a proposed RM BY REBECCA MINKOFF line to retailers at the end of 2021 – a development of which Icon was unaware, contrary to North Star's position below.  After the Guez deposition, Icon asked North Star to produce the previously undisclosed CADs.  North Star refused, asserting that the CADs: were not sought in Icon's document requests, making Icon's request untimely; are in the possession of Sunrise, not North Star; and are not relevant.

      With respect to North Star's claim that the CADs were not requested in discovery, Icon's requests for production sought, *inter alia*, "All communications between RM Holdings or RML, on the one hand, and North Star, on the other, concerning the Licenses, the Marks or Icon, dated before the filing of this Action."  North Star's counsel asserted during meet-and-confer discussions that there are no written communications about the CADs and speculated that Sunrise/North Star showed the CADs to RML during videoconference discussions.  That distinction is of no moment

because the CADs were writings shared in communications by North Star's predecessor, Sunrise, with RML, and therefore are within the scope of Icon's request.

Moreover, even if Icon's request did not encompass the CADs, Icon only learned of their existence during the Guez deposition on March 29, after Counterclaim-Defendants repeatedly delayed making him available earlier.  The day after the Guez deposition, Icon emailed a request for the CADs.  Courts in the Second Circuit do not require a formal Rule 34 document request to grant a motion to compel such as this.  *Armamburu v. Healthcare Fin. Servs.*, 2007 U.S. Dist. LEXIS 49039, at *9 (E.D.N.Y. July 6, 2007) ("defendant has not cited, nor is this Court aware of any decision by a court in the Eastern or Southern Districts of New York denying a motion to compel on the basis that the moving party did not make a formal request for production of documents"); *Ferlito v. Cty. of Suffolk*, 2009 U.S. Dist. LEXIS 149819, at *5-6 (E.D.N.Y. Sep. 25, 2009) ("it is well-settled among district courts within this Circuit that an oral request for documents made during a party deposition need not be followed up with a 'formal' document demand in order to trigger the producing party's obligation to respond") (collecting cases).  And to the extent North Star argues Icon's request is also untimely because it was not made within thirty days of the end of fact discovery, that argument fails because: (i) North Star delayed producing Guez until the very end of the fact discovery period, even though he was noticed for deposition on February 15; (ii) North Star does not need thirty days to produce a discrete, readily identifiable set of documents like the CADs.

As for North Star's claim that the CADs are in the exclusive possession of Sunrise, that claim is absurd.  North Star works out of Sunrise's offices; Sunrise is the designated Manager of North Star under the North Star Operating Agreement; Sunrise owns a majority interest in North Star; and Guez controls both North Star and Sunrise.  The claim that North Star cannot access CADs that depict goods bearing trademarks North Star professes to own blinks reality.

Finally, North Star's position on relevance is not well taken because the CADs are relevant to Phase 1 of discovery in this proceeding for two reasons.  First, North Star is suing Icon by claiming that Icon marketed goods under the Marks without a valid license, when its own affiliate did exactly that, at a time when Icon's rights were undisputed.  Second, this evidence establishes that a key motivation behind the alleged secured party sale of the Marks in early 2022 was for Sunrise/North Star to usurp Icon's rights and market and sell goods within Icon's licensed product categories, a fact North Star continues to deny.

North Star's Position:  Icon is Not Entitled to Production of the CADs

*Icon's request to compel the production of the CADs is procedurally improper*.  The CADs are not responsive to "All communications between RM Holdings or RML, on the one hand, and North Star, on the other, concerning the Licenses, the Marks or Icon, dated before the filing of this Action."  If any communications relating to the CADs exist, they were sent by Sunrise between April-November 2021, *well before* the actual or contemplated formation of North Star in February 2022.  Thus, by its plain terms, this request does not encompass Sunrise's communications, such that it is of no moment whether they are now within the possession, custody, or control of North Star.

Icon contends that even if the CADs are not responsive to extant document requests, they were properly requested at Mr. Guez's deposition.  This is wrong.  It is not settled Second Circuit law that document requests may be made at depositions as opposed to pursuant to Fed. R. Civ. P. 34 or that such requests may be the subject of a motion to compel.  *See Schwartz v. Mktg.*

*Publishing Co.*, 153 F.R.D. 16, 21 (D. Conn. 1994) (holding that documents must be requested pursuant to Fed. R. Civ. P. 34).  Even accepting Icon's authority, Icon's request for CADs is untimely.  *See Llewellyn v. N. Am. Trading*, 1997 WL 177878, at *2 (S.D.N.Y. Apr. 11, 1997) ("Treating plaintiff's oral requests at Leininger's deposition as an operative request for production of documents, [citation omitted], defendants had thirty days to produce such documents unless a shorter time was ordered by the Court. Fed. R. Civ. P 34(b).  Plaintiff cannot unilaterally impose abbreviated discovery deadlines and then bring a motion for sanctions on the grounds that such deadlines were not met.").  Pursuant to this authority, Icon's request is untimely because (a) it was propounded well after the November 4, 2022 deadline to serve Fed. R. Civ. P. 34 requests and (b) the deadline for North Star to respond – 30 days from the request – is after the close of discovery.  *See Jackson-Lipscomb v. City of New York*, 2019 U.S. Dist. Lexis 204789, at *4-5 (S.D.N.Y. Nov. 5, 2019) (holding that discovery requests are untimely if the deadline to respond falls after the discovery cutoff).  Likewise, even if Icon's request is timely, any motion seeking to enforce it is premature; North Star's deadline to respond has not expired.

Icon cannot justify its failure to meet the discovery deadlines by any purported delay by North Star in producing Mr. Guez.  Icon first served a notice on February 15, 2023 for Mr. Guez's deposition to be taken on March 6, 2023.  **Ex. A**.  At that time, the close of discovery – which had already been extended twice – was March 8, 2023.  Dkt. 53.  Icon was aware of Mr. Guez since at least as early as March 2022, when Mr. Guez met with Joseph Edery, Icon's CEO, regarding the acquisition of the Rebecca Minkoff trademarks by North Star.  Thus, the Court should reject Icon's contention that it is prejudiced by any purported delay in scheduling Mr. Guez's deposition.

Furthermore, Icon cannot obtain documents from non-parties Sunrise or Mr. Guez without serving a subpoena, which Icon has not done.  Notably, Plaintiff's proffered authority refers to requesting documents at a "party" deposition.  Icon noticed Mr. Guez's deposition as an individual; he was not testifying as a North Star 30(b)(6) witness.

<u>*The CADs are neither relevant not proportional to the first phase of discovery*</u>.  The first phase of discovery in this matter is *limited* to discovery regarding North Star's trademark infringement claims (Dkt. 23), Icon's affirmative defenses thereto (Dkt. 28, p. 7), and Icon's first counterclaim/third-party claim for a declaration that its licenses with RML are still valid.  Dkt. 13, ¶¶ 61-64.  Even accepting Icon's characterization (i.e., North Star "strategized to terminate prematurely Icon's licenses to sell goods under the REBECCA MINKOFF trademarks," *see supra*), the CADs are, at best, relevant to Icon's second counterclaim against North Star for tortious interference with contract, i.e., "North Star intentionally procured RML's and RM Holdings' breach of the Licenses by pressuring RML and RM Holdings to treat the Licenses as terminated …".  Dkt. 13, ¶ 67.  Icon has not shown how the CADs *themselves* are relevant or proportional to the first phase of discovery.  Even accepting Icon's argument, what is relevant is the *fact* that Sunrise developed and distributed the CADs, evidence of which Icon already has.  Finally, North Star alleged that Icon continued to <u>market and sell</u> REBECCA MINKOFF branded products after the licenses were terminated.  In contrast, Sunrise developed CADs to explore a license for denim products with Rebecca Minkoff, LLC, which per the testimony in this case, was done <u>with knowledge</u> by Icon.  North Star should not be ordered to produce the CADs, which are the property and in the possession of Sunrise, a nonparty.

### B. Additional Rule 30(b)(6) Deposition Regarding Royalties From 2022

North Star's Position: Icon Must Produce a Witness to Testify Regarding its Royalty Payments

In its Amended Notice of Deposition of Icon, North Star sought Icon's testimony, pursuant to FRCP 30(b)(6), regarding "All royalties paid by or due from Icon relating to the sale of products offered under or bearing the [Marks]." Icon agreed to provide a witness to testify to royalties paid by or due from Icon from February 7, 2022 to the present. Icon designated Thomas Ott, its Director of Business Development, to testify on its behalf regarding this category. Yet Mr. Ott was not prepared to answer whether Icon had paid any royalties and any amount thereof. Mr. Ott testified that Icon's Chief Financial Officer, Angela Poppe, would know this information. **Ex. B**, Ott Tr., 149:6-150:24. In light of this deficiency, Icon represented that Joseph Edery, its Chief Executive Officer, and whose deposition North Star had noticed, would be prepared to testify regarding this information. Mr. Edery was not able to do so. **Ex. C**, Edery Tr., 11:24-12:4, 150:13-151:14.

North Star is entitled to an order compelling Icon's production of a witness prepared to testify on its behalf regarding this deposition topic. *See* FRCP 37(a)(3)(B) ("A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if: … (ii) a corporation or other entity fails to make a designation under Rule 30(b)(6) or 31(a)(4)"); *Fab-Tech, Inc. v. E.I. Du Pont De Nemours and Co.*, No. 104CV275, 2006 WL 3702753, at *2 (D. Vt. Dec. 13, 2006) ("When a designee is unable to adequately respond to certain relevant areas of inquiry, the designating party has a duty to substitute an appropriate deponent."; internal quotation marks omitted); *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, No. 10 Civ. 1391(LGS), 2013 WL 1286078, at *5 (S.D.N.Y. Mar. 28, 2013) (ordering party to produce a prepared 30(b)(6) witness within two weeks of order). Additionally, the Court should order Icon to pay North Star's expenses incurred taking this additional deposition. *See Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64, 91 (W.D. Va. 2021) (awarding movant costs and fees incurred related to the opposing party's failure to designate prepared corporate designees).

In the parties' meet and confer discussions, Icon did not dispute that its witnesses have not been prepared to testify to this category. Instead, Icon argues that it should be allowed to provide the royalty information by means of an interrogatory response. The Court should not permit this. Icon should not be able to avoid deposition on a topic because it failed to produce a witness <u>two</u> times. Icon also argues that that the amount of royalties paid and due under the relevant license agreements is suited to an interrogatory response. But here, the royalty is not a simply percentage of gross revenues but, instead, a percentage of Icon's "Net Factory Cost." North Star requires testimony setting forth this amount and how it is calculated. Additionally, certain of the questions North Star intends to ask – particularly "why" questions – are more appropriately answered at deposition. Courts agree with North Star's position. *See, e.g., Marker v. Union Fid. Life Ins. Co.*, 125 F.R.D. 121, 126 (M.D.N.C. 1989) ("Nothing in the Federal Rules of Civil Procedure gives a party the right to not respond or inadequately respond to a Rule 30(b)(6) deposition notice or subpoena request and elect to supply the answers in a written response to an interrogatory. An attempt to so limit a Rule 30(b)(6) deposition is not warranted. Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored."). The Court should compel Icon to produce a knowledgeable witness. Icon has had two chances to do so, and has not.

Icon's Position: Counterclaim Defendants Already Have the Information They Profess to Have Been Denied, and That Information Can Be Confirmed Through Targeted Interrogatories

North Star served Icon with a Fed. R. Civ. P. 30(b)(6) notice (the "Notice") containing 22 topics.  This dispute is about one of them: "All royalties paid by or due from Icon relating to the sale of products offered under or bearing the [Marks]."  On January 17, Icon objected to the scope of this topic on the ground that North Star could not have alleged any non-payment of royalties prior to 2022, such that Icon would only produce a company representative to testify about any royalties due after February 7, 2022, when Counterclaim-Defendants allege Icon's licenses terminated.  North Star did not contest this objection.

There is no dispute that Icon has produced a detailed spreadsheet documenting all sales of goods sold in 2022 that bore the Marks, breaking those sales down by product, units sold, customer, order date, total sales, total costs and total gross profits.  There is also no dispute that Icon paid no royalties in 2022, because the only parties to which such payments could have been made are the various Counterclaim Defendants, who know that they have not been paid.  There is also no dispute that *none* of the Counterclaim Defendants has pleaded any claim for breach of contract against Icon stemming from the non-payment of these royalties, and the Amended Complaint filed by North Star (the only Counterclaim-Defendant seeking relief against Icon) does not seek the recovery of these unpaid royalties.  *See* Dkt. 23.  Likewise, North Star's amended initial disclosures make no mention of any claim for unpaid royalties.  **Ex. D** at 5.

The fact that North Star seeks an order compelling the deposition of a witness to calculate an amount that it is not seeking to recover should, by itself, result in a denial of its application.[1] But even if that were not the case, the best way to address the issue is for North Star to serve focused interrogatories asking for the information it professes to need, namely: (i) a calculation of the amount of royalties Icon believes would have been payable in 2022 had its licenses not been breached through their improper termination, and how that amount was calculated; and (ii) confirmation that Icon did not pay these royalties because the licenses were terminated improperly – a legal question best answered through service of a contention interrogatory in any event.  Courts in this Circuit have regularly adopted this approach when the issue to be explored is discrete and does not require a narrative explanation, and this is one of those circumstances.  *See Smith v. City of New York*, 2006 U.S. Dist. LEXIS 61236, at *5-6 (E.D.N.Y. 2006) ("depositions are expensive propositions, and verified answers to interrogatories can be a much more efficient way to obtain the evidence sought").  Icon is willing to answer interrogatories seeking this information within two weeks of being served.

---

[1] North Star's claim that Icon should pay for a wholly unnecessary deposition demonstrates that this aspect of its application is not about obtaining the information it claims to need – which Icon is willing to provide – than it is about increasing the burden and expense of litigation.  *Power Home Solar, LLC v. Sigora Solar, LLC*, 339 F.R.D. 64 (W.D. Va. 2021), cited for the proposition that Icon should cover the costs of a less efficient means of obtaining the information at issue, is not apposite.  There, the Rule 30(b)(6) designee admitted she was not prepared to testify about *any* of the 17 deposition topics.  *Id*. at 88.  Moreover, the failure to prepare the witness followed repeated failures to provide sufficient discovery responses that had caused significant prejudice.  *Id*. at 88-89.

C. **Document Collection From Morris Missry**

North Star's Position:  Icon Must Collect and Produce Documents in Morris Missry's Production, Custody, or Control Related to Icon's Negotiations to Acquire the Marks

███████████████████████████████████████████████████████████████
███████████████████████████████████████████ Mr. Edery testified that he and Mr. Missry communicate through email.  *Id.*, 106:10-13.

Mr. Missry was intimately involved in Icon's negotiations to acquire the Rebecca Minkoff assets, including the Marks.  Gary Herwitz, the individual tasked with finding a buyer for the assets, testified that he had discussions with Mr. Missry regarding Icon's interest in acquiring the assets.  **Ex. E**, Herwitz Tr., 120:9-122:3, 128:8-129:19.

Mr. Edery, as Icon's 30(b)(6) witness on the topic, testified that Icon did not collect emails or other documents in the possession, custody, or control of Mr. Missry for review and production in response to North Star's discovery requests.[2]  Icon has only produced approximately 25 emails in discovery *in total*.  These emails include communications with Mr. Missry regarding Icon's negotiations to acquire the Rebecca Minkoff assets.  Icon produced emails in .pdf format without metadata, so North Star was unable to determine from whose custody the emails were collected without Mr. Edery's testimony.

The Court should order Icon to collect documents, including emails, in Mr. Missry's possession and produce any documents responsive to North Star's discovery requests.  As an accommodation to Icon, North Star will allow Icon to limit its collection to documents related to Icon's discussions and negotiations related to the acquisition of the Rebecca Minkoff assets and his knowledge of the UCC Article 9 foreclosure on those assets.  The evidence of record strongly supports that Mr. Missry has unique, heretofore unproduced documents on this subject.  Furthermore, the terms on which Icon discussed potentially purchasing the Rebecca Minkoff assets are highly relevant to Icon's affirmative defenses to North Star's infringement claims.  Specifically, Icon has raised questions as to the validity and propriety of the Article 9 foreclosure and sale by which North Star acquired the Rebecca Minkoff assets.  Based on the evidence to date, North Star reasonably believes that Icon and Bluestar Alliance were negotiating an almost identical deal to North Star's and effectively laid the groundwork for the deal North Star ultimately entered, thereby contradicting Icon's characterization of the Article 9 sale and North Star's acquisition of the assets.

Icon argues that Mr. Missry only serves a legal counsel role for Icon.  This is belied by, *inter alia*, (i) his significant ownership interest in Icon and (ii) documentary and testimony evidence regarding his involvement in negotiating the business terms of Icon's potential acquisition of the Rebecca Minkoff assets.  Also, Icon argues that if Mr. Missry is ordered to search and produce responsive documents, outside counsel for North Star and the Minkoff entities should be required to do so as well.  This tit-for-tat does not track.  Unlike outside counsel, Mr. Missry is a plurality owner of one of the parties in this lawsuit.  If anything, the appropriate analogy is North Star's general counsel Christian Trunnell, who played a mixed business and legal role in the Article 9

---

[2] North Star has not yet received the final deposition transcript including this testimony.  This point is not disputed, though.

transaction, and from whose records North Star searched and produced responsive documents in discovery.

Icon's Position: Counterclaim-Defendants' Application Is Untimely and Disproportionate to the Needs of This Action

Counterclaim-Defendants' demand concerning Missry is another example of their desire to burden Icon with unnecessary litigation costs that are disproportional to the needs of this action. On March 30, the day before the extended fact discovery deadline expired, Counterclaim-Defendants requested for the first time that Icon search emails from Missry and produce non-privileged communications responsive to Counterclaim-Defendants' document requests.[3]  Missry is a principal of a law firm with nearly 30 attorneys, Wachtel Missry LLP, that renders legal services to Icon, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  Per the testimony of Icon's Rule 30(b)(6) designee, Missry has no business function at Icon, **Ex. B** (Ott Tr.) at 113:6-8, and his role is strictly legal, unlike North Star's witness Chris Trunnell, who acts as an in-house attorney for the various Guez entities and has a business role.  Counterclaim-Defendants have known of Missry's role as Icon's outside counsel since before this lawsuit was filed.  Notwithstanding, Counterclaim-Defendants belatedly insist that Icon search his emails.  Icon objects to this demand, as follows.

First, the request is untimely.  As noted, Missry's representation of Icon, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮, was known to Counterclaim-Defendants before this litigation started, as far back as May 2022, when the parties were discussing an amicable resolution to their dispute.  Given North Star's claims that it is too late for Icon to seek CADs whose existence was never disclosed until the very end of fact discovery, it can hardly argue that Icon must conduct searches of emails in the possession of the Icon outside counsel it has known about for nearly one year.

Second, the request is disproportional to the needs of this case.  Counterclaim-Defendants have stated that they are seeking Missry's emails to establish that, in late 2021, Icon expressed interest in purchasing the Marks.  However, this fact was established through emails and testimony from nearly every other witness deposed in this case, and Icon will stipulate to that fact. Icon will also stipulate to what most of deposition witnesses have also testified to on this issue: Icon and certain third-parties were not able to negotiate a purchase of the Marks, and that Icon's licensing relationship remained in place thereafter.  Given this, any emails Missry and his firm might produce add nothing of consequence to this matter.[4]

In contrast, the burden on Icon to have Missry's firm identify non-privileged emails or other documents, if any, concerning these unsuccessful purchase efforts will be substantial.  Missry represents many clients, and preserving the sanctity of their attorney-client privilege will require a painstaking review of every email identified through keyword searching to exclude communications that do not pertain to: (i) other clients; or (ii) unrelated Icon legal issues.  This process will be an expensive, time-consuming project, to no good end, given that Edery's emails were searched, and Icon's willingness to stipulate to certain facts.  Counterclaim-Defendants'

---

[3] Counterclaim Defendants' request regarding Missry is limited to production of non-privileged communications, and they have not called for any responsive privileged communications to be logged.

[4] Counterclaim-Defendants contend that the "evidence of record strongly supports that Mr. Missry has unique, heretofore unproduced documents" but cite to nothing to support this wholly speculative claim, because the evidence does not support this proposition at all.

assertion that Missry's emails should be searched because he had communications about a potential acquisition with Gary Herwitz conveniently overlooks the fact that Herwitz is administering the wind-down of RML and RM Holdings, such that Counterclaim-Defendants already have full access to those communications. Indeed, Herwitz was a Rule 30(b)(6) designee for Counterclaim-Defendants on topics such as this.

Further, to the extent Counterclaim-Defendants seek communications between Missry and third parties about Icon's effort, with others, to acquire the Marks, Counterclaim-Defendants could have sought such communications from those third parties months ago. It is far too late to shift the significant burden of Counterclaim-Defendants' delay onto Icon, and Missry.

Respectfully Submitted,

| | |
|---|---|
| SHEPPARD, MULLIN, RICHTER & HAMPTON LLP | DORSEY & WHITNEY LLP |
| | |
| /s/Paul A. Bost | /s/Bruce R. Ewing |
| Theodore C. Max | Bruce R. Ewing |
| Jill M. Pietrini (*pro hac vice*) | Joshua R. Kornfield |
| Paul A. Bost (*pro hac vice*) | |
| | |
| Counsel for Plaintiff and Counterclaim-Third-Party Defendants | Counsel for Defendant-Counterclaim-Plaintiff |

SMRH:4891-3906-0061.1

North Star shall produce the referenced CADs. That Icon Trade learned of the CADs' existence at the deposition of Gerard Guez excuses any delay in requesting these documents. North Star's statement does not suggest that it lacks the ability to produce the CADs. Production of these documents is relevant to the first phase of discovery and the burden of production is proportional to the needs of the case for the reasons stated in Icon Trade's statement with respect to the CADs.

Icon Trade shall produce a Rule 30(b)(6) witness who is able to testify to the question of royalties paid by or due from Icon Trade from February 2022 to the present. North Star's request for Icon Trade to bear the expenses associated with this supplemental deposition is **DENIED**. The deposition shall be limited to the question of the referenced royalty payments. The parties shall complete this supplemental deposition no later than **April 28, 2023**.

Icon Trade shall collect and produce documents in the possession of Morris Missry related to the acquisition of the Rebecca Minkoff assets and the UCC Article 9 foreclosure on the assets. The parties shall negotiate in good faith to minimize the burden to the extent possible on Mr. Missry to identify responsive, non-privileged documents.

Icon Trade's motion to seal is **DENIED,** without prejudice to renewal. Icon Trade offers only a statement that the information it seeks to file under seal is non-public and confidential in support of its motion, and does not offer any argument as to why its disclosure could cause competitive harm or other injury sufficient to rebut the presumptive public access to court filings. *See Saks Inc. v. Attachmate Corp.*, No. 14 Civ. 4902, 2015 WL 1841136, at *17 (S.D.N.Y. Apr. 17, 2015) ("Vague and conclusory allegations of potential harm are insufficient to establish good cause [to seal]."). No later than **April 21, 2023,** Icon Trade may renew its motion to seal, in a letter not to exceed three pages, describing the potential harm that could result from disclosure and citing case law in support of sealing on these facts.

A revised case management plan and scheduling order will issue separately. The Clerk of Court is respectfully directed to close the motion at Dkt. 69.

Dated: April 18, 2023
       New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE