**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

Jill M. Pietrini
310.228.3723 direct
jpietrini@sheppardmullin.com
File Number:  85LZ-361988

May 5, 2023

**By ECF**
The Honorable Lorna G. Schofield
United States District Judge
U.S.D.C. - Southern District of New York
40 Foley Square
New York, NY  10007

> Re:  *North Star IP Holdings, LLC v. Icon Trade Services LLC*,
>      Case No. 1:22-cv-07324-LGS

Dear Judge Schofield:

    We represent Plaintiff/Counter-Defendant North Star IP Holdings, LLC ("North Star") and Third-Party Defendants Jalapeno Pizza Holdings LLC f/k/a Rebecca Minkoff Holdings LLC and Jalapeno Pizza LLC f/k/a Rebecca Minkoff LLC (collectively, "RM"), each a Florida limited liability company.  Per the Fourth Amended Civil Case Management Plan and Scheduling Order (Dkt. 71) and the Court's Individual Rule III.A.1., we submit this pre-motion letter for North Star's and RM's motion for summary judgment on Defendant/Counterclaimant/Third-Party Plaintiff Icon Trade Services LLC's ("Icon") Third and Fourth Affirmative Defenses set forth in its Amended Answer to North Star's Amended Complaint (Dkt. 28, p. 7) and First Claim for Declaratory Judgment in its Counterclaims and Third-Party Complaint (Dkt. 13, ¶¶ 61-64).

    **A.**    **The Relevant Pleadings**

    North Star has sued Icon for infringement of its REBECCA MINKOFF trademarks and related claims.  Dkt. 23.  Icon defends against North Star's claims by claiming that license agreements granting it the right to use the REBECCA MINKOFF trademarks are still valid.  Specifically, Icon has asserted these affirmative defenses to North Star's claims:  "[North Star] lacks standing to prosecute its claims because it is not the owner of the trademarks upon which such claims are founded" and "[North Star's] claims are barred because [Icon] holds a license to the trademarks in question."  Dkt. 28, p. 7.  In its Counterclaims and Third-Party Complaint, Icon seeks a declaratory judgment that the licenses "are valid and binding contracts."  Dkt. 13, ¶¶ 61-64.

    **B.**    **Brief Summary of the Relevant Facts**

    Beginning in February 2007, non-party Rosenthal & Rosenthal ("Rosenthal"), a lender and factor in the apparel industry, entered into a series of factoring agreements with RM.  As security for its payment and performance obligations under the agreements, RM granted to Rosenthal a security interest in certain of its assets, including the REBECCA MINKOFF trademarks.  Starting

**SheppardMullin**

The Honorable Lorna G. Schofield
May 5, 2023
Page 2

in 2011, Rosenthal perfected its security interest by filing UCC-1 financing statements with the Florida Secretary of State, timely filing continuation statements with the Florida Secretary of State, and recording its liens with the U.S. Patent & Trademark Office.

In 2019, Rebecca Minkoff, LLC entered into licenses with Icon granting Icon the *exclusive* right to use the REBECCA MINKOFF trademarks for certain product categories (the "Licenses").

On January 24, 2022, following its default on its agreements with Rosenthal, RM surrendered to Rosenthal peaceful possession of the encumbered collateral, including the REBECCA MINKOFF trademarks, for sale by Rosenthal pursuant to Article 9 of the Uniform Commercial Code ("UCC"). As part of this peaceful possession, RM and other lienholders waived all of their rights to notification of the sale of the collateral and redemption under UCC §§ 9-611, 9-620, and 9-623. On February 8, 2022, and pursuant to UCC § 9-610, Rosenthal entered a Secured Party Bill of Sale with North Star and non-party North Star Opco, LLC, whereby North Star and North Star Opco, LLC, acting in good faith, purchased from Rosenthal the collateral, including the REBECCA MINKOFF trademarks, for value (the "Article 9 Sale"). Rosenthal complied with all applicable laws, including notice requirements, in conducting the Article 9 Sale.

**C.    The Court Should Enter Summary Judgment on Icon's Third and Fourth Affirmative Defenses and Declaratory Judgment Claim**

There is no genuine dispute of material fact that the Article 9 Sale resulted in (a) North Star's ownership of the REBECCA MINKOFF trademarks and (b) the termination of Icon's claim to exclusive rights in the trademarks. Thus, North Star is entitled to judgment as a matter of law on Icon's third and fourth affirmative defenses and North Star and RM are entitled to judgment as a matter of law on Icon's declaratory judgment claim.

First, Rosenthal obtained and perfected its security interest in the REBECCA MINKOFF trademarks well before the Licenses were entered. Thus, the Licenses were subject and subordinate to Rosenthal's security interest. *See* NY UCC § 9-315(a)(1) ("[A] security interest or agricultural lien continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest or agricultural lien."); NY UCC § 9-317(d) ("A licensee of a general intangible … takes free of a security interest if the licensee or buyer gives value *without knowledge* of the security interest and *before* it is perfected.") (emphasis added). Rosenthal did not waive its rights under its security interest, and the Licenses were entered after perfection of Rosenthal's liens.

Second, the foreclosure sale was conducted in a commercially reasonable manner in accordance with NY UCC §§ 9-601, *et seq.* North Star intends to support its motion with a declaration from Michael Callahan of Rosenthal attesting to the compliance by Rosenthal and its experienced counsel, Otterbourg P.C., with the relevant statutory procedures. Icon cannot raise any genuine disputes of material fact as to the propriety of the sale. North Star identified Mr. Callahan in its initial disclosures as having knowledge of Rosenthal's "[s]ecurity interests in the

**SheppardMullin**

The Honorable Lorna G. Schofield
May 5, 2023
Page 3

REBECCA MINKOFF trademarks; peaceful possession agreement entered into with [RM] relating to the REBECCA MINKOFF trademarks; and sale of REBECCA MINKOFF trademarks to North Star," but Icon chose not to take the deposition of Mr. Callahan or anyone else at Rosenthal.

Third, as a consequence of the Article 9 Sale, the collateral was transferred to North Star free and clear of any subordinate claims, including the Licenses, which were effectively extinguished.  *See* NY UCC §§ 9-315(a)(1), 9-317(d), *supra*; NY UCC § 9-617(a) ("A secured party's disposition of collateral after default:  (1) transfers to a transferee for value all of the debtor's rights in the collateral … and (3) discharges any subordinate security interest or other subordinate lien other than liens created under any law of this state that are not to be discharged."); *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, 417 F. Supp. 3d 1180, 1188 (W.D. Mo. 2019) (applying NY UCC; holding that trademarks were validly purchased from Rosenthal in a foreclosure sale, and purported assignment of marks remained subject to Rosenthal's security interest per NY UCC § 9-315(a)(1)); *Cyber Solutions Intern., LLC v. Priva Sec. Corp.*, No. 1:13-CV-867, 2015 WL 852354, at *5-6 (W.D. Mich. Feb. 26, 2015), *aff'd*, 634 Fed. Appx. 557 (6th Cir. 2016) (finding that an exclusive intellectual property license was subject to the prior rights of the secured party, and the secured party, upon foreclosure, had exclusive rights to the licensed intellectual property).  Even if the Article 9 Sale did not comply with the requirements of Article 9 (which it did, and Icon has no evidence otherwise), North Star acted in good faith and, thus, took the trademarks free of Icon's claims.  NY UCC § 9-617(b) ("A transferee that acts in good faith takes free of the rights and interests described in [Section 9-617(a)], even if the secured party fails to comply with this division or the requirements of any judicial proceeding.").  Icon can point to no evidence – only speculation – that North Star did not act in good faith.  In fact, North Star's acquisition of the collateral, including the trademarks, was almost identical to the acquisition that Icon and non-party Bluestar Alliance LLC negotiated with Rosenthal before North Star outbid it.

Icon seeks safe harbor under NY UCC § 9-321(b), which states that "[a] licensee in ordinary course of business takes its rights under a **nonexclusive license** free of a security interest in the general intangible created by the  licensor, even if the security interest is perfected and the licensee knows of its existence."  (Emphasis added.)  Yet the Licenses are *expressly* and *substantively* exclusive.  Icon has repeatedly characterized the Licenses as "exclusive" and its witnesses testified that the Licenses granted it the exclusive right – including to the exclusion of RM and now North Star – to use the trademarks in certain categories.  *See Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 430 (E.D.N.Y. 2013) (internal citations omitted) ("[T]he difference between 'exclusive' and 'nonexclusive' licenses concerns the continuing ability of the grantor to use or further license to others the licensed property during the period the license is in effect."); 9 Hawkland UCC Series § 9-321:1, n.4, citing UCITA § 102(a) ("A 'non-exclusive license' is one that does not preclude the licensor from transferring to other licensees the same information, informational rights, or contractual rights within the same scope.").

For these reasons, the Court should grant North Star's and RM's motion for summary judgment or set a briefing schedule for the motion.

**SheppardMullin**

The Honorable Lorna G. Schofield
May 5, 2023
Page 4

Very truly yours,

/s/Jill M. Pietrini

Jill M. Pietrini

SMRH:4894-1038-8312.5

cc:     Counsel of Record (By ECF)