

BRUCE R. EWING
Partner
(212) 415-9206
ewing.bruce@dorsey.com

May 5, 2023

**VIA ECF**
The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re: *North Star IP Holdings, LLC v. Icon Trade Services LLC,*
Case No. 1:22-cv-07324-LGS

Dear Judge Schofield:

We represent Defendant/Counterclaimant/Third-Party Plaintiff Icon Trade Services LLC ("Icon") in the above-referenced matter.  Per the Fourth Amended Civil Case Management Plan and Scheduling Order, Dkt. 71, and Section III(A)(1) of the Court's Individual Practices, Icon writes in advance of the May 17 pre-motion conference concerning its anticipated motion for summary judgment seeking the dismissal of all claims pleaded by Plaintiff North Star IP Holdings, LLC ("North Star").

**Relevant, Undisputed Facts**

In late 2019, Icon entered into two license agreements with Third-Party Defendant Jalapeno Pizza LLC (f/k/a Rebecca Minkoff LLC, "RML") that entitled it to use the REBECCA MINKOFF trademark and derivatives (the "Marks") on certain products.  Neither license expired or was terminated pursuant to its terms prior to North Star's commencement of this litigation.  On April 11, 2022, Icon received a notice from RML and its affiliate, Third-Party Defendant Jalapeno Pizza Holdings LLC (f/k/a Rebecca Minkoff Holdings LLC, "Minkoff Holdings"), that because Minkoff Holdings had purportedly terminated its intra-company license agreement with RML, Icon's licenses had also been terminated, such that "except for any sell-off rights under your agreement with RML, your right to use the [Marks] under your license agreement[s] with RML has terminated."  The notice also stated that ownership of the Marks had been transferred to North Star on February 8, 2022 via an "Article 9 proceeding" initiated by Rosenthal & Rosenthal, Inc. ("Rosenthal"), a lender to RML.

Under the licenses, Icon had six months to sell off goods bearing the Marks in the event they were terminated for reasons other than the grounds specifically enumerated in the two agreements, so long as Icon did not "advertise the sale of Products during the Sell-Off Period."  Since Icon received the purported termination notice on April 11, 2022, the last date for Icon to sell off licensed products bearing the Marks was October 11, 2022.  The undisputed evidence shows that Icon made its last shipment of goods bearing the Marks on October 4, 2022.  Notwithstanding, North Star has pleaded claims against Icon for trademark infringement under 15 U.S.C. § 1114(1) and "the common law"; false designation of origin and false association under 15 U.S.C. § 1125(a); and common law unfair competition.  *See* Dkt. 23.



The Honorable Lorna G. Schofield
May 5, 2023
Page 2

**Icon Is Entitled to Summary Judgment Dismissing North Star's Trademark Claims**

While there are many genuine disputes of material fact concerning whether the Minkoff Holdings-RML intra-company license was valid or validly terminated; whether such purported termination divested Icon of its contractual rights; and whether North Star is bound by the Icon licenses notwithstanding the alleged "Article 9 proceeding," among other matters, these disputes all pertain to Icon's counterclaims and do not prevent summary adjudication of North Star's claims. Those claims fail because North Star cannot establish that Icon used the Marks in commerce after the conclusion of the contractual sell-off period, because it is undisputed that Icon sold no goods bearing the Marks after that date.

A trademark plaintiff like North Star is "required to show 'use in commerce' as an element of an infringement claim." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 105 (2d Cir. 2012). The U.S. Trademark Act of 1946 (the "Lanham Act"), defines "use in commerce," with respect to goods, as occurring when a mark "(A) is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, *and* (B) the goods are sold or transported in commerce." *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 207 (2d Cir. 2005) (emphasis added). Here, since October 4, 2022, Icon has not "sold or transported in commerce" any goods bearing the Marks. As a result, North Star has no trademark claims, as all prior sales were permitted under the contractual sell-off period specified in Icon's licenses, since Icon did not "advertise the sale of Products during the Sell-Off Period." And even if it did, Icon was entitled to a notice and an opportunity to cure any breach caused by the placement of such advertising; no such notice was given.

In its Amended Complaint, North Star asserts that Icon has continued to use the licensed Marks by: (i) maintaining that its licenses remain in effect; (ii) continuing to list the REBECCA MINKOFF trademark on Icon's website as a "brand" licensed by Icon; (iii) maintaining product listings for REBECCA MINKOFF goods on a website owned by Icon accessible at <soholuggage.com>, even though no goods bearing the Marks were sold through that website after October 4, 2022; and (iv) filing a lawsuit against RML in January 2022 concerning the renewal of one of Icon's two licenses. Dkt. 23, ¶ 20. However, none of these alleged uses qualifies as a "use in commerce" under the Lanham Act because they were not accompanied by the sale or transportation of any goods.

Professing a belief that one has a right to use a trademark, as occurs whenever an application to register a mark is filed, does not qualify as a "use in commerce" unless some sale or transportation of goods also occurs. *See Macia v. Microsoft*, 152 F. Supp. 535, 539 (D. Vt. Jun. 21, 2001). Likewise, the Second Circuit has affirmed that the use of an alleged false designation of origin in "brochures, reports, photos, drawings and [a] model," when there was no accompanying sale or transportation of goods, does not qualify as a "use in commerce" under the Lanham Act. *See Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F. Supp. 838, 847 (E.D.N.Y. 1975), *aff'd*, 538 F.2d 314 (2d Cir. 1976). Other courts have held similarly. *See Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 762 (8th Cir. 2010) ("two customer presentations, a press release, an announcement and a website" were insufficient to create a triable issue of fact concerning "use in commerce" where no sales of any goods



The Honorable Lorna G. Schofield
May 5, 2023
Page 3

occurred; summary judgment for defendant affirmed); *Southco, Inc. v. Fivetech. Inc.*, 982 F. Supp. 2d 507, 512 (E.D. Pa. Nov. 12, 2013) ("neither [defendant's] website, product catalogue, nor price quotes to [a customer] can constitute 'use in commerce'" of the mark at issue; summary judgment granted to defendant on this claim).  Accordingly, in the absence of any sales of goods bearing the Marks after the end of the contractual sell-off period, North Star has no Lanham Act claims, and Icon is entitled to summary judgment.

While most courts have treated the inability to establish "use in commerce" as a flaw equally fatal to common law trademark claims as it is to Lanham Act claims, *see, e.g.*, *Lopez v. Bigcommerce, Inc.*, 2017 U.S. Dist. LEXIS 120842, at *6-9 (S.D.N.Y. Aug. 17, 2019), there is one decision from this District holding that "use in commerce" is not a required element of a New York State unfair competition claim.  *See Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 416-17 (S.D.N.Y. 2018) (granting summary judgment on Lanham Act claims in absence of "use in commerce," but allowing New York unfair competition to proceed where that claim was based on allegations that defendant's employees supplied allegedly infringing bottles in response to requests for branded bottles, and otherwise misrepresented the origin of defendant's goods).  However, even if that decision has the better of the argument, North Star's unfair competition claim still fails because it cannot establish the essential element of bad faith.

The proponent of a claim for unfair competition under New York law "must show that the defendant misappropriated the plaintiff's labors or expenditures and that the defendant displayed some element of bad faith in doing so."  *Turner v. Temptu Inc.*, 2013 U.S. Dist. LEXIS 114298, at *34-35 (S.D.N.Y. Aug. 13, 2013).  Courts in this District recognize that when a party like Icon has a reasonable belief of its continued right to use a trademark, to the point where it asserts claims seeking to vindicate that right, as Icon has done here on its counterclaims, no genuine dispute on the issue of bad faith exists for purposes of an unfair competition claim.  *See Rockland Exposition, Inc. v. Alliance of Auto Serv. Providers*, 894 F. Supp. 2d 288, 328-31 (S.D.N.Y. Sep. 11, 2012).  And here, Icon's good faith is further demonstrated by its cessation of sales of goods bearing the Marks upon the expiration of the sell-off period, even though Icon believes that it has every right to sell licensed products bearing the Marks.

For all the foregoing reasons, North Star has no basis to assert trademark claims against Icon, and the Court should enter summary judgment against it.

Respectfully Submitted,

*/s/ Bruce R. Ewing*

Bruce R. Ewing

cc:   All Counsel of Record (via ECF)