

BRUCE R. EWING
Partner
(212) 415-9206
ewing.bruce@dorsey.com

May 12, 2023

**VIA ECF**

The Honorable Lorna G. Schofield
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

      Re:    *North Star IP Holdings, LLC v. Icon Trade Services LLC,*
             Case No. 1:22-cv-07324-LGS

Dear Judge Schofield:

      We represent Defendant/Counterclaimant/Third-Party Plaintiff Icon Trade Services LLC ("Icon") in the above-referenced matter, and we write in response to the letter of Plaintiff North Star IP Holdings, LLC ("North Star") regarding its anticipated motion for summary judgment on Icon's declaratory judgment counterclaim and Icon's third and fourth affirmative defenses. Dkt. 75. However, myriad disputes of material fact will preclude such a motion from being granted.

**Relevant Background**

      In 2021, Sunrise Brands LLC ("Sunrise") sought a license from Third-Party Defendant Jalapeno Pizza LLC (f/k/a Rebecca Minkoff LLC; "RML") to sell apparel, including denim goods, under certain REBECCA MINKOFF trademarks (the "Marks"). RML discussed this license with Sunrise, even though Icon already had a license to sell denim apparel under the Marks that it was entitled to (and later did) extend until December 31, 2025. Intent on securing a deal with Sunrise, RML tried to convince Icon to abandon its denim license in favor of Sunrise, to no avail. Unable to convince Icon to surrender its rights, in early January 2022, RML and Sunrise abruptly shifted course, deciding that RML and Third-Party Defendant Jalapeno Pizza Holdings LLC (f/k/a Rebecca Minkoff Holdings LLC; "Minkoff Holdings") would sell their assets to Sunrise's newly created affiliate, North Star, via RML's lender, Rosenthal & Rosenthal, Inc. ("Rosenthal"). In form and substance, this was not a foreclosure by a lender followed by a commercially reasonable sale to a good-faith purchaser, as contemplated by UCC § 9-610. Rather, it was a multiparty deal contrived to give Sunrise/North Star the ability to usurp the Marks and Icon's valuable license rights. However, the tactic of arranging for a foreclosure, rather than conducting a direct sale from RML to North Star, did not nullify Icon's license rights.

**Disputed Facts About Whether Icon's Licenses Terminated**

      In its pre-motion letter, North Star does not mention its previous allegations that Icon's licenses terminated due to a termination of a separate intra-company license between RML and Minkoff Holdings, or due to RML's default under its loan agreements. *See* Amended Complaint, ¶ 20. It appears that North Star has walked away from these theories because discovery has shown that the RML-Minkoff Holdings license was a sham between alter egos that was never



enforced, and that RML had defaulted on its loans well before entering into the Icon licenses. Instead, North Star now claims that Icon's licenses terminated because of an alleged foreclosure sale that occurred on February 8, 2022 (the "Alleged Foreclosure").[1]

However, the claim that the Icon licenses automatically terminated as a result of the Alleged Foreclosure is contradicted by the deal documents; many of them provided that North Star/Sunrise would acquire any of RML's licenses that it elected to assume after the transaction closed, including those of Icon. Other documents expressly gave North Star the right to reinstate or obtain an assignment of RML's licenses, including those of Icon. If the Icon licenses terminated by operation of law on February 8, as North Star now claims, the inclusion of these provisions would make no sense. And it is not just the words of North Star/Sunrise that contradict their current arguments, but their actions. Not long after the alleged automatic termination, a Sunrise/North Star executive called for an internal meeting to plan the subsequent termination of Icon's licenses. Other Sunrise/North Star employees continued to enforce Icon's licenses for a month after February 8, demanding free samples of products and exercising oversight over Icon's products and packaging. It was only two months after the Alleged Foreclosure that Sunrise/North Star directed RML's agents to send Icon a termination notice substantially drafted by Sunrise/North Star's general counsel. None of this is consistent with an automatic termination of Icon's licenses occurring on February 8, 2022.

**Disputed Facts About the Commercial Reasonableness of the Alleged Foreclosure**

There are also genuine disputes of material fact about the commercial reasonableness of the Alleged Foreclosure. UCC § 9-610(b) requires that "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable." "Because such questions are usually 'factually intense,' summary judgment on commercial reasonableness is generally improper." *Lauter v. Rosenblatt*, 2020 U.S. Dist. LEXIS 115183, at *15 (C.D. Cal. June 30, 2020); *see also TAP Holdings, LLC v. ORIX Fin. Corp.*, 2014 N.Y. Misc. LEXIS 4848, at *41-42 (Sup. Ct., N.Y. Cnty., Nov. 7, 2014) (triable issues as to whether foreclosure sale occurred in commercially reasonable manner); *Dougherty v. 425 Dev. Assocs.*, 93 A.D.2d 438, 447 (1st Dept. 1983) (same). Procedurally, the Alleged Foreclosure was not commercially reasonable because it was a private sale without an open bidding process. *See Nat'l Bank of Del. Cty. v. Gregory*, 85 A.D.2d 839, 840 (3d Dept. 1981) (denying summary judgment due to open questions as to whether there could have been a sales process that produced higher bids for the assets); *Edgewater Growth Capital Partners LP v. H.I.G. Capital, Inc.*, 68 A.3d 197, 211-12 (Del. Ch. 2013) ("for a sale of a company's assets to be commercially reasonable, there must be some marketing of the assets and the opportunity to

---

[1] The cases North Star cites to show the propriety of the Alleged Foreclosure are distinguishable. *Hallmark Indus., Inc. v. Hallmark Licensing, LLC*, 417 F. Supp. 3d 1180, 1188 (W.D. Mo. 2019), stands only for the uncontroversial proposition that a secured creditor like Rosenthal can sell trademarks in a foreclosure sale, but the circumstances of the Alleged Foreclosure are what is at issue here, not whether Rosenthal was entitled to foreclose on and sell collateral generally. As for *Cyber Sols. Int'l, LLC v. Priva Sec. Corp.*, 2015 U.S. Dist. LEXIS 22985 (W.D. Mich. Feb. 26, 2015), *aff'd*, 634 Fed. Appx. 557 (6th Cir. 2016), the court in that case held that a licensee "explicitly recognized" that its license was subject to the secured creditor's security interest and observed that the license was approved as part of a bankruptcy plan based on assurances that the secured creditor's security interest would not be impaired. *Id.* at *17. None of these circumstances are present here, and North Star also misses the key takeaway of this case: the license at issue did not automatically terminate based on the foreclosure. *Id.* at *23.



bid on it"). Here, the Alleged Foreclosure involved one buyer and one seller, no other bidders and no advance marketing of the assets being sold. In light of this, North Star/Sunrise cannot obtain summary judgment, irrespective of whatever the lender with a vested interest in vouching for the propriety of the transaction (Rosenthal) might say in support of North Star's motion.

**Disputed Facts About Whether North Star was a Good Faith Transferee**

There are also material disputes about whether North Star was a good faith transferee such that it could have acquired the Marks free and clear of Icon's licenses. *Atlas MF Mezzanine Borrower, LLC v. Macquarie Tex. Loan Holder LLC*, 174 A.D.3d 150, 159 (1st Dept. 2019) ("if the transferee is something other than a 'good-faith transferee,' it takes the collateral subject to 'the debtor's rights in the collateral'"). There is significant overlap in the ownership structures of North Star and RML/Minkoff Holdings. Transfers to corporate insiders, as occurred here in significant part, "are presumed to be in bad faith." *Lifeng Chen v. New Trend Apparel, Inc.*, 8 F. Supp. 3d 406, 448 (S.D.N.Y. 2014); *see also Schlant v. Parkview Health Servs. of N.Y., LLC (In re O'Leary)*, 599 B.R. 209, 214 (Bankr. W.D.N.Y. 2019) (denying summary judgment and holding that "good faith requires an absence of collusion"). In addition, the evidence shows that North Star/Sunrise entered into this transaction with knowledge of Icon's licenses and with the specific intent of usurping Icon's rights. Third, good faith transferees must demonstrate "honesty in fact." *Sec. Alarm Fin. Enters. v. Parmer*, 2014 U.S. Dist. LEXIS 51088, at *26 (N.D.W. Va. Apr. 14, 2014). However, the documentary evidence shows that North Star intentionally sent misleading communications to RML's former licensees about the sale process and the scope of their contractual rights.

**Disputed Facts About Whether North Star is RML's Successor**

Icon's licenses provided that they would be binding on "Licensor's successors and assigns." North Star plainly qualifies as such a successor. First, Sunrise's CEO testified that "North Star is the way we refer to Rebecca Minkoff" because the business has largely remained the same both prior to and after the sale. Second, although North Star claims it received the Marks free and clear because they passed through Rosenthal, Minkoff Holdings directly assigned its "income, royalties, and payments" with respect to its trademarks to North Star. Additionally, a February 8, 2022 Secured Party Bill of Sale states that North Star received "[a]ll assets of [RML/Minkoff Holdings] in which Rosenthal has a security interest[,]" and Rosenthal potentially had a security interest in Icon's trademark licenses. Finally, as noted, the former owners of RML and Minkoff Holdings hold an ownership interest in North Star, and North Star hired several of RML's former employees to service the continuing business.

**Disputed Facts About Icon's Exclusivity**

Apart from all of the above, Icon is entitled to prevail on its declaratory judgment counterclaim if UCC § 9-321(b) applies and Icon took its rights free of Rosenthal's security interest. North Star argues that this provision of the UCC is inapplicable because it only applies to "non-exclusive" licenses, and the Icon licenses were "exclusive." But the Icon licenses were only "exclusive except as provided herein," and they did not grant Icon all rights in the Marks covering all classes of goods, so they were "non-exclusive" as the UCC uses that term. Once again, North Star's legal authorities are inapposite, as they concern definitions of exclusivity applied in the context of copyright law and the Uniform Computer Information Transactions Act, a model statute that was never enacted in New York.



                      Respectfully Submitted,

                      */s/ Bruce R. Ewing*

                      Bruce R. Ewing

cc:    All Counsel of Record (via ECF)