**SheppardMullin**

Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Floor
Los Angeles, California 90071-1422
213.620.1780 main
213.620.1398 fax
www.sheppardmullin.com

Jill M. Pietrini
310.228.3723 direct
jpietrini@sheppardmullin.com
File Number: 85LZ-361988

May 12, 2023

**By ECF**

The Honorable Lorna G. Schofield
United States District Judge
U.S.D.C. - Southern District of New York
40 Foley Square
New York, NY 10007

> Re: *North Star IP Holdings, LLC v. Icon Trade Services LLC,*
> *Case No. 1:22-cv-07324-LGS*

Dear Judge Schofield:

We represent Plaintiff North Star IP Holdings, LLC ("North Star"). Per the Court's May 8, 2023 order (Dkt. 78), we respond to Defendant Icon Trade Services LLC's ("Icon") pre-motion letter on its anticipated motion for summary judgment on all of North Star's claims. Dkt. 76.

Icon argues that it is entitled to summary judgment because North Star cannot establish that Icon made any unauthorized use in commerce of the REBECCA MINKOFF trademarks ("Marks"). Icon is not entitled to summary judgment because there is a question as to when its sell-off rights began and whether it complied with the license agreements' (the "Licenses") sell-off provision. Also, if the Court finds that Icon's right to use the Marks was extinguished by the Article 9 foreclosure, Icon is not entitled to a sell-off period. Furthermore, Icon's uses of the Marks constitute "uses in commerce" under Second Circuit law. Icon's proffered authority addresses situations where the defendant is alleged to have advertised goods offered under the mark *but never commenced* any sale of goods under the mark. That is not the case here. Moreover, Icon continues to use the Marks to advertise its licensing and luggage retail services.

**Icon Did Not Comply With, and Was Not Entitled to, the Sell-Off Provision**

Icon argues that pursuant to the Licenses it entered with Rebecca Minkoff Holdings, LLC ("RM Holdings"), its 6-month sell-off period under the Licenses began on April 11, 2022 and concluded on October 11, 2022. This argument ignores that the notice ("Notice Letter") RM Holdings and Rebecca Minkoff, LLC ("RML") delivered to Icon and other licensees stated that all licenses were terminated as of February 7, 2022, and that the Marks were sold by Rosenthal & Rosenthal, Inc. ("Rosenthal"), RM Holdings' senior secured creditor, to North Star on February 8, 2022 pursuant to an Article 9 foreclosure. Furthermore, there is a dispute as to when, independent of the Notice Letter, Icon became aware of the February 7, 2022 termination of the Licensees and February 8, 2022 Article 9 foreclosure. Thus, there is a question of fact as to whether Icon's sales after August 7 or 8, 2022 fall within the sell-off period.

Second, Icon acknowledges that the Licenses' sell-off provision forbids Icon and its designated distributors from advertising the licensed products during the sell-off period. However, Icon admits that during the sell-off period, it continued to, at the very least, advertise the Marks on its <iconluxurygroup.com> website (and, in fact, continues to do so to date) and advertised REBECCA MINKOFF luggage on its <soholuggage.com> storefront. Such use of the Marks not only violates the terms of the sell-off provisions (assuming they are applicable) but also constitutes trademark infringement. *See BJB Ltd. v. iStar Jewelry LLC*, 533 F. Supp. 3d 83, 99 (E.D.N.Y. 2021), citing 4 *McCarthy on Trademarks and Unfair Competition* § 25:30 (5th ed. 2021) ("[I]t is black letter law that the scope of a trademark license is defined by the terms of that license, and that 'a use by a licensee which is outside the scope of the license is both trademark infringement and a breach of contract.'").

Third, as set forth in North Star's May 5, 2023 pre-motion letter, the Article 9 foreclosure resulted in the transfer of the Marks to North Star free and clear of any subordinate claims, including the Licenses. Dkt. 75, p. 3. Per NY UCC § 9-617(a), "A secured party's disposition of collateral after default: (1) transfers to a transferee for value all of the debtor's rights in the collateral … and (3) discharges any subordinate security interest or other subordinate lien other than liens created under any law of this state that are not to be discharged." As a result of the Article 9 foreclosure, the Licenses and any grant of right to use the Marks therein, including the sell-off provision, were extinguished. This is not contradicted by the Notice letter which was sent and signed by RM Holdings and RML, not North Star, and expressly tied sell-off rights, if any, to the February 7, 2022 termination of the Licenses, not the February 8, 2022 Article 9 foreclosure.

## Icon Has Used the Marks in Commerce for Goods and Services

To prevail on its Lanham Act claims, North Star must establish that Icon made a "use in commerce" of the Marks within the definition of that phrase set forth in Lanham Act § 45, 15 U.S.C. § 1127. Dkt. 76, p. 2, citing *Kelly-Brown v. Winfrey*, 717 F.3d 295 (2d Cir. 2012) and *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400 (2d Cir. 2005)[1]. However, this requirement is not as narrow as Icon contends: "A plaintiff is not required to demonstrate that a defendant made use of the mark in any particular way to satisfy the 'use in commerce' requirement." *Kelly-Brown*, 717 F.3d at 305. *See also LoanStreet, Inc. v. Troia*, No. 21 Civ. 6166, 2022 WL 3544170, at *10 (S.D.N.Y. Aug. 17, 2022), quoting *Planned Parenthood Fed'n of Am., Inc. v. Bucci*, No. 97 Civ. 0629, 1997 WL 133313, at *3 (S.D.N.Y. Mar. 24, 1997) ("The narrow reading of 'use in

---

[1]    *See Rescuecom Corp. v. Google, Inc.*, 562 F.3d 123, 131-141 (criticizing ruling in *1-800 Contacts* in appendix entitled "On the Meaning of 'Use in Commerce' in Sections 32 and 43 of the Lanham Act); *Can't Live Without It, LLC v. ETS Express, Inc.*, 287 F. Supp. 3d 400, 415 (S.D.N.Y. 2018) ("In this Court's view, it was always 'plainly apparent from context' that Section 1127 does not apply to infringement claims. Nevertheless, despite the confusion (in every sense) generated by the competing discussion in *1-800 Contacts* and *Rescuecom Corp.*, the Circuit has not overruled *1-800 Contacts* …").

commerce' that defendant urges is inconsistent with the body of case law recognizing that the term is 'broad and has a sweeping reach.'").

There is, at the very least, a question of fact as to whether Icon has used and is using the Marks in commerce for goods. Icon does not dispute that as recently as October 2022, it used the Marks on goods and sold those goods. Icon also does not dispute that it claims a continued right to use the Marks on goods; indeed, it filed a counterclaim for declaratory judgment on this issue. Thus, even accepting Icon's recitation of the facts, it has merely *suspended* its use in commerce of the Marks on goods. This is far different from the authorities cited by Icon, all of which relate to situations where the defendants had *never* sold goods using or bearing the plaintiff's mark but, at most, expressed an intent to do so. *See Macia v. Microsoft*, 152 F. Supp. 2d 535, 539 (D. Vt. 2001) ("The Amended Complaint does not allege that Intuit made any use in commerce of PocketMoney or any similar mark. The only alleged use of the mark is Intuit's filing of an ITU trademark application. Unless and until Intuit uses the mark in the course of trade, to identify actual goods for sale or transport, it cannot be subject to suit for trademark infringement under § 1125(a)."); *Tubeco, Inc. v. Crippen Pipe Fabrication Corp.*, 402 F. Supp. 838, 847 (E.D.N.Y. 1975) (dismissing false patent claim disguised as a 15 U.S.C. § 1125(a) claim); *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 762 (8th Cir. 2010) (no evidence of *any* sale or transport of any goods bearing the allegedly infringing mark); *Southco, Inc. v. Fivetech Tech. Inc.*, 982 F. Supp. 2d 507, 511-12 (E.D. Pa. 2013) (same).

Further, there is a question of fact as to whether Icon has used and is using the Marks in commerce for services. *See Rescuecom*, 562 F.3d at 128, quoting 15 U.S.C. § 1127 ("[A] mark shall be deemed to be in use in commerce … (2) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."). Icon has been and is currently using the Marks on <iconluxurygroup.com> to advertise its licensing services, and, as recently as February 2023, was using the Marks on <soholuggage.com> to advertise its online luggage retail store services. *See Adecco USA, Inc. v. Staffworks, Inc.*, No. 6:20-CV-744, 2021 WL 2593304, at *17-18 (N.D.N.Y. June 23, 2021) (plaintiff plausibly alleged that defendant's use of marks on its Facebook page to solicit clients constituted use in commerce); *LoanStreet*, 2022 WL 3544170, at *11 (incorporation of plaintiffs' trademark into text of publicly displayed advertisement constituted use in commerce).

Finally, there is a question of fact as to whether Icon acted in bad faith. Contrary to its representation otherwise, Icon has not ceased its use of the Marks upon the expiration of the purported sell-off period but has continued to use the Marks in advertisements for its services so as to capitalize on the Marks' goodwill and reputation. Furthermore, Icon has not paid royalties on any products sold during the purported sell-off period and refused to answer why such royalties have not been paid based on attorney-client privilege and work product.

**SheppardMullin**

Very truly yours,

/s/Jill M. Pietrini

Jill M. Pietrini

SMRH:4869-3490-3906.1

cc:      Counsel of Record (By ECF)