# EXHIBIT C

# PEACEFUL POSSESSION AGREEMENT

This Peaceful Possession Agreement (the "Agreement"), is entered into as of this 24th day of January, 2022, by and between Rosenthal & Rosenthal, Inc., a New York corporation ("Rosenthal"), Rebecca Minkoff, LLC, a Florida limited liability company ("Minkoff"), and Rebecca Minkoff Holdings, LLC, a Florida limited liability company ("Holdings," and together with Minkoff, the "Minkoff Companies").

## W I T N E S S E T H:

**WHEREAS**, Minkoff and Rosenthal are parties to that certain (i) Factoring Agreement dated February 23, 2007, as amended and/or supplemented (the "Factoring Agreement"), (ii) Inventory Security Agreement dated March 1, 2007, as amended and/or supplemented (the "Inventory Security Agreement"), (iii) Intellectual Property Security Agreement dated March 8, 2011, as amended and/or supplemented (the "IP Security Agreement") (iv) Domain Name and Website Collateral Assignment and Security Agreements dated October 17, 2019, as amended and/or supplemented (the "Domain Name Security Agreement"), and (v) and all other instruments, agreements, security agreements and other documents executed or delivered in connection with the foregoing (collectively with the Factoring Agreement, Inventory Security Agreement, IP Security Agreement, and Domain Name Security Agreement, the "Factoring Documents," and capitalized terms used herein and not otherwise defined shall have the meanings given them in the Factoring Documents);

**WHEREAS**, Holdings guaranteed the obligations of Minkoff under the Factoring Agreement pursuant to a certain Guarantee dated September 1, 2011, as amended and/or supplemented (the "Holdings Guarantee", and all other instruments, agreements, security agreements and other documents executed or delivered in connection with the foregoing, including, without limitation, that certain Intellectual Property Security Agreement and that certain General Security Agreement, each on or about September 1, 2011, collectively with the Holdings Guarantee, the "Guarantee Documents");

**WHEREAS**, by that certain Amendment to Factoring Agreement dated February 19, 2021 (the "Subject Amendment"), Rosenthal, the Minkoff Companies, and the other parties thereto, agreed that certain defaults by Minkoff had occurred under the Factoring Documents, and by letter dated June 16, 2021 Rosenthal notified the Minkoff Companies of the termination of any agreement by it to forbear from exercising its rights and remedies in respect of such defaults, which defaults continue through the date of this Agreement and remain uncured through the date hereof which permit Rosenthal to exercise rights and remedies, including the sale of the Collateral (as hereinafter defined);

**WHEREAS**, Rosenthal has no obligation to make any financial accommodations to Minkoff;

**WHEREAS**, the Minkoff Companies have determined that it is in the best interest of all their creditors to surrender the Collateral (as defined below) pursuant to the terms of this Agreement to permit one or more secured party sales by Rosenthal or its agents;

**WHEREAS**, on or about the date hereof the Minkoff Companies, the undersigned guarantors and members of the Minkoff Companies, Rosenthal, and Sunrise Brands, LLC, are entering into a letter of intent (the "Letter of Intent") for a sale of certain of the Collateral pursuant Rosenthal's rights under Article 9 of the Uniform Commercial Code (the "UCC");

**NOW, THEREFORE**, in consideration of the mutual covenants and undertakings set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned parties agree as follows:

1.  <u>Acknowledgments</u>.  Minkoff hereby acknowledges, confirms and agrees that:

    (a) <u>Obligations</u>.  As of the close of business on January 20, 2022, Minkoff is liable and indebted to Rosenthal for all Obligations arising under or in connection with the Factoring Documents in the aggregate principal amount of [SUBJECT TO MOTION TO SEAL], plus interest accrued and accruing thereon, fees accrued and accruing thereon, and all costs, expenses, attorneys' fees and other charges, ledger debt or contractual obligations now or hereafter payable to Rosenthal under the Factoring Documents, including, without limitation, all amounts which may be paid by Rosenthal in connection with the sale or other disposition of the Collateral.

    (b) <u>Security Interests</u>.  As collateral security for the prompt payment and performance of all Obligations, Rosenthal has, and shall continue to have, valid, enforceable and perfected first priority liens upon and security interests in all assets and properties of the Minkoff Companies in which Rosenthal was granted a lien or security interest pursuant to the Factoring Documents and the Guarantee Documents as security for the Obligations, and the proceeds and products of all of the foregoing, including, without limitation, in the Acquired Assets as defined in the Letter of Intent, each of which are hereby reaffirmed in all respects (the "<u>Collateral</u>").

    (c) <u>Defaults</u>.

        (i) Each of the Minkoff Companies hereby acknowledges, confirms and agrees that various events of default have occurred and are continuing under the Factoring Documents, including without limitation those certain Defaults referenced in the Subject Amendment (the "<u>Subject Defaults</u>").

        (ii) Each of the Minkoff Companies acknowledges, confirms and agrees that the Subject Defaults constitute Defaults under the Factoring Documents and entitle Rosenthal to immediately exercise its rights and remedies under the Factoring Documents, the Guarantee Documents and applicable law.  Rosenthal has not waived, presently does not intend to waive and does not hereby waive the Subject Defaults or any other Default which may have occurred prior to the date hereof or which may exist as of the date hereof and nothing contained herein or the transactions contemplated hereby shall be deemed to constitute any such waiver.

    (d) <u>Binding Effect</u>.  Each of the Minkoff Companies hereby acknowledges, confirms and agrees that each of the Factoring Documents and the Guarantee Documents was duly executed and delivered by it and is in full force and effect as of the date hereof.  The agreements and obligations of Minkoff contained in such Factoring Documents constitute the legal, valid and binding obligations of Minkoff enforceable against Minkoff or any guarantor in accordance with the terms thereof.

2.  <u>Peaceful Possession, Surrender of Collateral</u>.

    (a) Each of the Minkoff Companies hereby surrenders, delivers, grants and turns over to Rosenthal, peaceful possession of the Collateral, wherever located, and the products and proceeds of such Collateral.  Each of the Minkoff Companies hereby acknowledges, confirms and

agrees that such surrender of the Collateral is irrevocable. Such surrender and delivery of the Collateral to Rosenthal is in recognition of the rights of Rosenthal as a secured party under the UCC and other applicable law. Rosenthal may accept such surrender at the times and to the extent it may determine in its sole discretion and without further notice, for any lawful purpose including without limitation in order for Rosenthal to transfer some or all of the Collateral to any buyer of all or any portion thereof at a private or public sale. Each of the Minkoff Companies acknowledges that its surrender thereof and Rosenthal's acceptance of any portion thereof, shall not, without Rosenthal's further written agreement, constitute acceptance in full or partial satisfaction of the Obligations. Minkoff hereby consents to any public or private sale of the Collateral or any portion thereof, and each hereby waives, to the fullest extent permitted by the UCC, any notice of any sale of any or all of the Collateral.

(b)    Each of the Minkoff Companies hereby waives all of its rights to notification or otherwise under (i) Section 9-611 of the UCC as to the sale or other disposition by Rosenthal of the Collateral, including, without limitation, any such sale or other disposition under Section 9-610 of the UCC or otherwise, (ii) Section 9-620 of the UCC regarding acceptance of the Collateral as discharge of the Obligations or any portion thereof, and (iii) Section 9-623 of the UCC regarding any right it may have to redeem the Collateral or any portion thereof.

(c)    Each of the Minkoff Companies knowingly waives any rights it may have to notice and a hearing before any court of competent jurisdiction and consents to Rosenthal's possession, sale, transfer, license or other disposition of or realization on the Collateral.  Without in any way limiting or prejudicing the rights or remedies of Rosenthal under the Factoring Documents, Guarantee Documents and applicable law, each of the Minkoff Companies agrees that Rosenthal may (i) at any time dispose of all such Collateral, or any portion thereof, as provided for under applicable, law free and clear of any and all rights and interests of the Minkoff Companies in or to any of the Collateral and (ii) take any action as Rosenthal may deem appropriate with respect to the Collateral.

(d)    All proceeds of the Collateral received and retained by Rosenthal shall be applied by Rosenthal to the Obligations in such order and manner as Rosenthal shall determine in its sole discretion.  Each of the Minkoff Companies shall remain liable for any deficiency until all Obligations are fully and indefeasibly paid and satisfied on terms and conditions acceptable to Rosenthal.

(e)    Each of the Minkoff Companies shall make itself available and cooperate with Rosenthal with respect to the surrender of the Collateral including related books and records and any sale thereof, and shall execute and deliver any and all other agreements, documents and instruments deemed necessary or desirable by Rosenthal and its counsel to effect a sale or other disposition of the Collateral pursuant to Section 9-610 of the UCC or any other applicable law.

(f)    Each of the Minkoff Companies hereby agrees to provide to Rosenthal and its designees, and cause to be provided to Rosenthal and its designees, unrestricted and unimpeded access to any Collateral at all locations and premises where located, including access to, but not possession of, (i) any books or records of the Minkoff Companies, and (ii) all computers in or upon which any such books or records or other Collateral may be stored or saved.

(g)    Each of the Minkoff Companies agrees to cooperate with Rosenthal in connection with, and further agrees not to interfere in any way with, the exercise by Rosenthal of any of its rights and remedies against the Collateral, including the right to immediately foreclose and

liquidate all such Collateral. Each of the Minkoff Companies acknowledges and agree that Rosenthal has the immediate right to, and that Rosenthal may at any time, engage the services of a third-party consultant, liquidator, collection agency or similar Person, all at the sole cost and expense of the Minkoff Companies, in connection with the collection, liquidation, disposition of or other realization on the Collateral.

(h)     Nothing herein shall, or shall be deemed to, (i) limit any rights or interests of Rosenthal with respect to any assets or properties not expressly surrendered, delivered, turned over or granted to Rosenthal hereunder or under any of the Factoring Documents or Guarantee Documents, or (ii) constitute satisfaction of the Obligations of Minkoff to Rosenthal.

3.    No Assumption of Liabilities or Third-Party Beneficiaries. The parties hereby acknowledge and agree that the surrender to Rosenthal of the Collateral including related books and records and any acceptance by Rosenthal thereof, is not and shall not be construed to be an assumption by Rosenthal of any liability or obligation of the Minkoff Companies including, without limitation, any obligations to any real or personal property lessors or taxing authorities, all of which liabilities and/or obligations are and shall remain the sole and exclusive liability of the Minkoff Companies, or a waiver of any rights against any party not specifically and expressly waived. No person or entity not a party hereto is intended to be a third-party beneficiary of this Agreement.

4.    Financial Accommodations. Each of the Minkoff Companies hereby acknowledges and agrees that, notwithstanding any term of this Agreement or the surrender or sale of the Collateral, Rosenthal may make advances, including "protective advances" and/or provide other credit and financial accommodations to Minkoff as Rosenthal determines in its sole and absolute discretion; provided, that a decision by Rosenthal to make any such advances (or series of advances), including protective advances, or to provide such financial accommodations to Minkoff on or after the date of this Agreement or surrender or sale of the Collateral shall not be deemed to be a waiver of, or to limit, impair or modify in any way (i) Rosenthal's right to not make any such advances, including any protective advances, or to provide other credit and financial accommodations; (ii) Rosenthal's right to cease making any such advances, including protective advances, or providing other credit and financial accommodations without further notice to the Minkoff Companies, which rights are hereby expressly reserved and preserved; or (iii) the Subject Defaults or any other Defaults that may exist and be continuing on or after the date any such advance, including any protective advance, is made, or such credit and financial accommodations are provided by Rosenthal.

5.    Reservation of Rights. Each of the Minkoff Companies hereby acknowledges and agrees that, other than as is expressly set forth in section 7 (Release) below, nothing contained herein, nor any action taken by Rosenthal in connection herewith, is intended to or shall waive any claims, rights, remedies, powers or privileges available to Rosenthal under any of the Factoring Documents, Guarantee Documents, applicable law or otherwise, all of which claims, rights, remedies, powers and privileges are hereby expressly reserved and, by this Agreement, preserved.

6.    Waiver of the Automatic Stay. In the event that either of the Minkoff Companies files a petition or an involuntary petition is filed with respect to either of the Minkoff Companies under the Bankruptcy Code or under any other similar federal or state law (a "Bankruptcy Case"), each of the Minkoff Companies hereby agrees that it shall not in any manner oppose, support any opposition to, or otherwise cause the delay of any motion filed by Rosenthal for relief from the automatic stay in any such Bankruptcy Case so as to allow Rosenthal to exercise its rights under the Factoring Documents and/or Guarantee Documents with respect to the Collateral, including, without

limitation, enforcing the terms of this Agreement, taking possession of the Collateral, foreclosing Rosenthal's liens on the Collateral or otherwise exercising rights and remedies with respect to the Collateral.

       7.       <u>Release</u>.

       (a)       In consideration of the agreements of the parties contained herein and in the Letter of Intent, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, effective upon the closing of the sale transaction pursuant to the Letter of Intent, the parties hereto hereby agree to the following:

       (i)       Each of the Minkoff Companies, and by their signatures below, each of the undersigned guarantors and members (each, a "<u>Minkoff Releasor</u>," and collectively, the "<u>Minkoff Releasors</u>"), on behalf of themselves and their respective successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably release, remise and forever discharge Rosenthal, its successors and assigns, and its and its respective present and former members, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (Rosenthal and all such other parties being hereinafter referred to collectively as the "<u>Rosenthal Releasees</u>" and individually as a "<u>Rosenthal Releasee</u>"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "<u>Minkoff Claim</u>" and collectively, "<u>Minkoff Claims</u>") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which they, or their respective successors, assigns or other legal representatives, may now or hereafter own, hold, have or claim to have against the Rosenthal Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date of this Peaceful Possession Agreement.

       (b)       Rosenthal, by its signature below, (collectively with the Minkoff Releasors, the "<u>Releasors</u>"), on behalf of itself and its successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably releases, remises and forever discharges Uri Minkoff; Rebecca Minkoff; any affiliated entity through which either of them hold their interests in the Minkoff Companies; any officer, director, or employee of the Minkoff Companies (but not the Minkoff Companies themselves, or the undersigned guarantors Dear Jane, LLC and Rebecca Minkoff Holding Company, LLC); and Asterisk, I LLC; and their respective successors and assigns, and their and their respective present and former members, affiliates, subsidiaries, divisions, predecessors, directors, officers, attorneys, employees, agents and other representatives (but in any event, excluding the Minkoff Companies, Dear Jane, LLC, Rebecca Minkoff Holding Company, LLC or any other guarantor of the obligations of the Minkoff Companies other than Uri Minkoff and Rebecca Minkoff) (Uri Minkoff, Rebecca Minkoff, Asterisk I, LLC, and all such other parties being hereinafter referred to collectively as the "<u>Minkoff Releasees</u>" and individually as a "<u>Minkoff Releasee</u>," and, together with the Rosenthal Releasees, the "<u>Releases</u>"), of and from all demands, actions, causes of action, suits, covenants, contracts, controversies, agreements, promises, sums of money, accounts, bills, reckonings, damages and any and all other claims, counterclaims, defenses, rights of set-off, demands and liabilities whatsoever (individually, a "<u>Rosenthal Claim</u>" and collectively, "<u>Rosenthal Claims</u>," and, collectively with the Minkoff Claims, the "<u>Claims</u>") of every name and nature, known or unknown, suspected or unsuspected, both at law and in equity, which it,

or its successors, assigns or other legal representatives, may now or hereafter own, hold, have or claim to have against the Minkoff Releasees or any of them for, upon, or by reason of any nature, cause or thing whatsoever which arises at any time on or prior to the day and date of this Peaceful Possession Agreement in connection with the Factoring Documents or any guarantees executed in connection therewith, except to the extent of their obligations set forth in this Agreement and/or the Letter of Intent; provided, however, that the parties agree and acknowledge that it is the intent of the parties that the Minkoff Releasees be irrevocably released from their obligations under the Factoring Documents including, for the avoidance of doubt, in connection with any deficiency under Section 2(d) hereto.

(c)     Each Releasor understands, acknowledges and agrees that the release set forth above may be pleaded as a full and complete defense and may be used as a basis for an injunction against any action, suit or other proceeding which may be instituted, prosecuted or attempted in breach of the provisions of such release.

(d)     Each Releasor agrees that no fact, event, circumstance, evidence or transaction which could now be asserted or which may hereafter be discovered shall affect in any manner the final and unconditional nature of the release set forth above.

(e)     Each Releasor, on behalf of themselves and their respective successors, assigns and other legal representatives, hereby absolutely, unconditionally and irrevocably covenants and agrees with each Releasee that such Releasor will not sue (at law, in equity, in any regulatory proceeding or otherwise) any Releasee on the basis of any Claim released, remised and discharged above.  If any of the Releasors violates the foregoing covenant, the Releasors agree to pay, in addition to such other damages as any Releasee may sustain as a result of such violation, all attorneys' fees and costs incurred by any Releasee as a result of such violation.

(f)     EACH OF THE RELEASORS HEREBY EXPLICITLY WAIVES ALL RIGHTS UNDER AND ANY BENEFITS OF ANY COMMON LAW OR STATUTORY RULE OR PRINCIPLE WITH RESPECT TO THE RELEASE OF SUCH CLAIMS.  EACH OF THE RELEASORS AGREES THAT NO SUCH COMMON LAW OR STATUTORY RULE OR PRINCIPLE SHALL AFFECT THE VALIDITY OR SCOPE OR ANY OTHER ASPECT OF THIS RELEASE.

8.     <u>Termination</u>.  This Agreement will automatically terminate and be void and of no further force and effect in the event that either (i) the Proposed Transaction (as defined in the Letter of Intent) does not occur on or prior to thirty (30) days from the date of this Agreement, or (ii) the Letter of Intent is earlier terminated in accordance with its terms.

9.     <u>Acknowledgments</u>.  This Agreement is the result of a full and complete negotiation at arms' length between each of the Minkoff Companies and Rosenthal.  Each of the Minkoff Companies represents and warrants to Rosenthal that it has read and fully understands the terms and effect of this Agreement and has had the opportunity to consult with and receive the advice of counsel in connection herewith.

10.     <u>Governing Law</u>.  The rights and obligations hereunder of each of the parties hereto shall be governed by and interpreted and determined in accordance with the internal laws of the State of New York without regard to principals of conflicts of laws.

11. <u>Successors and Assigns.</u> This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns.

12. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts (including by means of facsimile or PDF signature pages), all of which taken together shall constitute one and the same instrument. Delivery of an executed counterpart of this Agreement by telefacsimile, e-mail or other method of electronic transmission shall have the same force and effect as the delivery of an original executed counterpart of this Agreement. In making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties thereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

ROSENTHAL & ROSENTHAL, INC.

By: *[signature]*
Name: Peter Rosenthal
Title: Co-President

REBECCA MINKOFF, LLC

By: _____
Name: _____
Title: _____

REBECCA MINKOFF HOLDINGS, LLC

By: _____
Name: _____
Title: _____

[Peaceful Possession Agreement Signature page]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

**ROSENTHAL & ROSENTHAL, INC.**

By: _____
Name: _____
Title: _____

**REBECCA MINKOFF, LLC**

By: _____
Name: Uri Minkoff_____
Title: _____CEO_____

**REBECCA MINKOFF HOLDINGS, LLC**

By: _____
Name: _____Uri Minkoff_____
Title: _____CEO_____

[Peaceful Possession Agreement Signature page]

6831263.8

## Guarantor and Member Acknowledgement and Waiver

Each of the undersigned guarantors and (direct or indirect) members of Rebecca Minkoff, LLC and Rebecca Minkoff Holdings, LLC (the "Minkoff Companies"), hereby acknowledges the above Peaceful Possession Agreement between Minkoff and Rosenthal (the "Peaceful Possession Agreement," and capitalized terms used herein and not otherwise defined having the meanings given them in the Peaceful Possession Agreement), and, in connection therewith, (i) agrees to be bound by the releases set forth in Section 7 thereof, and (ii) waives all of his/her/its rights to notification or otherwise under (x) Section 9-611 of the UCC as to the sale or other disposition by Rosenthal of the Collateral, including, without limitation, any such sale or other disposition under Section 9-610 of the UCC or otherwise, (y) Section 9-620 of the UCC regarding acceptance of the Collateral as discharge of the Obligations or any portion thereof, and (z) Section 9-623 of the UCC regarding any right he may have to redeem the Collateral or any portion thereof.

Dated: January 22, 2022

**REBECCA MINKOFF HOLDING COMPANY, LLC**, as member

By: _*UM*_
Name: *Uri Minkoff*
Title:

**ASTERISK I, LLC**, as member

By: _____
Name: Steven L. Hayes
Title: Manager

**DEAR JANE LLC**, as guarantor

By: _*UM*_
Name: *Uri Minkoff*
Title:

_____
**REBECCA MINKOFF**, as member and guarantor

_*UM*_
**URI MINKOFF**, as member and guarantor

**Guarantor and Member Acknowledgement and Waiver**

      Each of the undersigned guarantors and (direct or indirect) members of Rebecca Minkoff, LLC and Rebecca Minkoff Holdings, LLC (the "Minkoff Companies"), hereby acknowledges the above Peaceful Possession Agreement between Minkoff and Rosenthal (the "Peaceful Possession Agreement," and capitalized terms used herein and not otherwise defined having the meanings given them in the Peaceful Possession Agreement), and, in connection therewith, (i) agrees to be bound by the releases set forth in Section 7 thereof, and (ii) waives all of his/her/its rights to notification or otherwise under (x) Section 9-611 of the UCC as to the sale or other disposition by Rosenthal of the Collateral, including, without limitation, any such sale or other disposition under Section 9-610 of the UCC or otherwise, (y) Section 9-620 of the UCC regarding acceptance of the Collateral as discharge of the Obligations or any portion thereof, and (z) Section 9-623 of the UCC regarding any right he may have to redeem the Collateral or any portion thereof.

Dated: January 22, 2022

**REBECCA MINKOFF HOLDING COMPANY, LLC**, as member

By: _____
Name:
Title:

**ASTERISK I, LLC**, as member

By: *[signature: Steven L. Hayes]*

Name: Steven L. Hayes
Title: Manager

**DEAR JANE LLC**, as guarantor

_____
**REBECCA MINKOFF**, as member and guarantor

_____
**URI MINKOFF**, as member and guarantor

**Guarantor and Member Acknowledgement and Waiver**

Each of the undersigned guarantors and (direct or indirect) members of Rebecca Minkoff, LLC and Rebecca Minkoff Holdings, LLC (the "Minkoff Companies"), hereby acknowledges the above Peaceful Possession Agreement between Minkoff and Rosenthal (the "Peaceful Possession Agreement," and capitalized terms used herein and not otherwise defined having the meanings given them in the Peaceful Possession Agreement), and, in connection therewith, (i) agrees to be bound by the releases set forth in Section 7 thereof, and (ii) waives all of his/her/its rights to notification or otherwise under (x) Section 9-611 of the UCC as to the sale or other disposition by Rosenthal of the Collateral, including, without limitation, any such sale or other disposition under Section 9-610 of the UCC or otherwise, (y) Section 9-620 of the UCC regarding acceptance of the Collateral as discharge of the Obligations or any portion thereof, and (z) Section 9-623 of the UCC regarding any right he may have to redeem the Collateral or any portion thereof.

Dated: January 22, 2022

**REBECCA MINKOFF HOLDING COMPANY, LLC**, as member

By:_____
Name:
Title:

**ASTERISK I, LLC**, as member

By:_____
Name: Steven L. Hayes
Title: Manager

**DEAR JANE LLC**, as guarantor

_____
**REBECCA MINKOFF**, as member and guarantor

_____
**URI MINKOFF**, as member and guarantor